## EPHRAIM INGALS

### v.

## CECILIA B. PLAMONDON *et al.*

1. PARTITION WALL. Land covered by a party wall remains the several property of the owner of each half, but the title of each owner is qualified by the easement to which the other is entitled of supporting his building by means of the half of the wall belonging to his neighbor. The only proper easement attached to a party wall is the easement of support. It does not include a right to the unobstructed use of a flue by one party which is upon the land of the other.

2. EASEMENT — *springing from original design and sale of different parts of heritage.* The rule of the common law is, that where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit and advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the other, there is, in the silence of the parties, an implied understanding and agreement that these advantages and burdens shall continue as before the separation of the title.

3. SAME — *to affect purchaser with notice the servitude must be apparent.* Where the owner of premises divided the same east and west and erected a building on the north part, placing the south wall half on each piece with a flue projecting eight inches on the south lot, which was used to carry off the smoke from a furnace permanently attached in the building, the flue being necessary to the use of the furnace, and the flue stood exposed to view with chimney thereon, and the owner sold the north portion of the lot to the center of the south wall, with the building, to the complainant, and afterward sold the south half of the lot to the defendant, who contributed toward

the expense of the party wall, and the latter gave notice of an intention to close up the flue, whereupon the complainant filed his bill to enjoin the act, which the court dismissed : *Held,* that the court erred in dismissing the bill, as the easement was necessary and continuous, and was obvious and apparent to any observer of the servitude upon the south half of the lot, and therefore the last purchaser was chargeable with notice of its existence.

4. SAME — *when purchaser is chargeable with notice of.*    To affect a purhaser of property with notice of an easement, in favor of an adjoining owner, the easement must be obvious and apparent to any observer.    An apparent sign of servitude must exist on the premises purchased, in favor of the adjoining owner, or, as expressed by some of the authorities, the marks of the burden must be open and visible.

APPEAL from the Superior Court of Cook county ; the Hon. S. M. MOORE, Judge, presiding.

This was a bill for an injunction to restrain appellees from closing up or interfering with a flue in the party wall between the residence of appellant and one in process of erection by appellees.

In the year 1868, John Crighton owned fifty feet of ground upon the corner of Throop and Monroe streets, in Chicago, which was divided into two twenty-five feet lots ; and during that year he built upon the north lot a three-story and basement brick house.    The south wall was designed as a party wall and was so placed that its center coincides with the division line between the lots, half of the wall being upon one lot and half upon the other.    The wall is twelve inches thick, and upon the south side or side adjoining the vacant lot there is a projection eight inches thick caused by the chimney flues.    This is the flue appellees threaten to obstruct.    It furnishes a smoke-escape and draft for the furnace used in warming appellant's house; was built and used for that purpose by Crighton, the original owner of both lots and the builder of the house, during the winter of 1868-9, and until his conveyance of the property to appellant.    It has also been used by appellant in the same manner since the conveyance to him.

On February 5, 1869, Crighton entered into an agreement in writing with appellant for the sale and conveyance to him of

the north lot, which agreement, after providing for a conveyance on May 1, 1869, and which should include the brick house and all appurtenances thereon, contained this provision:

"And, whereas, said Crighton owns the premises next south and adjoining the premises above described, and the south wall of said house being a party wall, one-half thereof standing upon said lot or parcel of land next south and adjoining; now, in consideration as aforesaid, the said Crighton further covenants and agrees with said Ingals, that at the time of the execution of said deed as aforesaid, he will also execute a proper party wall agreement with said Ingals, to run with the land, in case the adjoining owner shall use the same, therein agreeing to pay for one-half the cost of the party wall when the ground next south of the above-described premises shall be improved, the value of said wall to be estimated at the time said land shall be improved and said wall used."

The agreement was signed and sealed by both the parties. The purchase price was $24,000.

On May 1, 1869, according to the contract, Crighton made his deed of the north lot to appellant, it being an ordinary warranty deed, conveying the premises, "together with the brick house and barn, and other improvements thereon situate * * * together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining."

On the 2d day of May, 1869, the parties entered into an agreement in writing, under their hands and seals, which, after reciting their several ownership of the lots, the improvement on appellant's lot, and that Crighton's was unimproved, continued as follows:

" And, whereas, the center of the south wall of the house, so standing on the ground of said Ingals, is directly over the line between the grounds of said Ingals and Crighton, *one-half thereof standing upon the ground of said Crighton*, though said wall is entirely and absolutely owned by said Ingals ; now, in consideration of one dollar and other good and valuable considerations moving from Ingals to Crighton, the receipt of which

is acknowledged, the said Crighton covenants with said Ingals, that so soon as the south twenty-five feet of the north fifty feet of said lot five is used or improved in such a way that any structure thereon is connected with said party wall, he will pay to said Ingals one-half of the cost to build such wall at the time such portion of said lot is used as aforesaid; and, for the consideration aforesaid, Crighton agrees to and with said Ingals to pay for such portion of the barn or other of said Ingals' improvements now projecting upon the land of said Crighton. * * *

" All agreements herein shall be construed as covenants, and shall run with the land, and be obligatory upon the heirs, assigns and personal representatives of the respective parties hereto. And it is further agreed by and between the parties hereto that this agreement shall be construed in conformity with law and usage touching party walls.

" In witness whereof, the parties hereto have hereunto affixed their hands and seals, the day and year first above written.

" JOHN CRIGHTON, [*Seal.*]<br>
" EPHRAIM INGALS, [*Seal.*] "

This agreement was duly recorded in the recorder's office of Cook county, May 10, 1869.

The south lot continued to be the property of Crighton and remained unimproved until some time in 1873, when Crighton sold and conveyed the same to the appellee, Cecilia B. Plamondon, wife of Ambrose Plamondon, who, soon after her purchase, began to improve the lot by the erection of a dwelling-house thereon. An estimate of the amount to be paid by her to appellant, as half the cost of the wall, under the agreement, was made and agreed to by the parties, and a receipt therefor in writing given by appellant, releasing Mrs. Plamondon from all claim for compensation for the wall to be used by her in the erection of her dwelling-house, and concluding as follows:

" This release, however, not to prejudice or affect in any way any rights of the undersigned except for compensation as

16—75TH ILL.

aforesaid to which he may be or become entitled under said agreement," (that of May 2, 1869).

On January 12, 1874, Mrs. Plamondon gave appellant notice in writing that, as in the proper construction of her house it might be necessary or desirable for her to close up the flues which were wholly within the part of the wall for which she had paid appellant, she should proceed to do so whenever her house should have progressed so that such action should seem proper. Thereupon this bill for an injunction was filed. A temporary injunction was allowed, which was afterward, on motion of appellees, dissolved by the court; and upon final hearing on pleadings and proofs, the court entered a decree dismissing the bill, and appellant took this appeal from the decree.

Mr. FRANK J. CRAWFORD, for the appellant.

Messrs. GARDNER & SCHUYLER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It appears from the evidence that the furnace in appellant's house, which is used for the heating thereof, was set up and used by Crighton, its builder and the original owner of both the lots, as it is now erected; that it is not movable or portable, but is constructed so as to be permanent, being inclosed by a brick wall connected with the floor and basement wall; that the flue in question was especially planned and adapted for a smoke-escape and draft for the furnace; that there are besides a kitchen and laundry flue in the house, but that neither one of these can be adapted or used for the furnace; that no other flue could be constructed for the use of the furnace without greatly injuring the house and involving material changes in its plan and arrangement. There is, it is true, the contradictory testimony of Crighton, that the smoke-pipe attached to the furnace might be connected with either of the other flues, and that they would either be sufficient to provide a proper draft

for the furnace, and that the change could be made at an expense not to exceed one hundred dollars. But the testimony of practical architects, who had made a personal examination of the premises, including the one who made the plans and designs of the dwelling and superintended its erection, is to the effect as first above stated, and their testimony must be taken as more competent and satisfactory upon the point than that of Crighton. The closing of the flue, then, would appear to have the effect to render the furnace useless. Under such circumstances the flue, as it now is and ever has been, must be regarded as reasonably necessary to the beneficial enjoyment of appellant's house. The location of the flue, or at least the greater portion of it, is in the south half of the south wall of the house.

The land upon which this south half of the wall rests, the appellee, Mrs. Plamondon, owns by conveyance of it to her from Crighton. This south wall, under the writings in evidence, must be regarded as a partition wall between appellant and Mrs. Plamondon, it having been paid for as such by her. Land covered by a party wall remains the several property of the owner of each half, but the title of each owner is qualified by the easement to which the other is entitled of supporting his building by means of the half of the wall belonging to his neighbor. *Gartridge* v. *Gilbert,* 15 N. Y. 601; *Brooks* v. *Curtis,* 50 id. 639; *Hendricks* v. *Stark,* 37 id. 106. The only proper easement attached to a party wall is the easement of support. This would give no right to the unobstructed use of the flue by appellant. The conveyance from Crighton to appellant of the north lot contains no express grant of such right. Was it acquired by implied grant under that conveyance?

The rule of the common law upon the subject is, that where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the

other, there is, in the silence of the parties, an implied under-
standing and agreement that these advantages and burdens, re-
spectively, shall continue as before the separation of the title.
Washb. Easements, 58; *Morrison* v. *King*, 62 Ill. 30; *Lamp-
man* v. *Milks*, 21 N. Y. 505; *Jones* v. *Jenkins*, 34 Md. 1. It
may be noted that the deed here from Crighton to Ingals,
specifically conveyed the house as well as the north lot.

Were the question between Crighton and Ingals, the equity
of the latter to restrain Crighton's interruption of the use of
the flue by Ingals — circumstanced as the flue is in respect of
the beneficial enjoyment of the house — would be plain.

In order that an easement should pass in the manner as above
named, by implication, under the grant of an estate, it must be
one that is *apparent*, as well as necessary and continuous. We re-
gard the easement here claimed by appellant, of the uninterrupted
use of this flue, as continuous, and necessary to the beneficial
enjoyment of his house, and the only serious question with us
as to the claim of this easement against the grantee of Crigh-
ton of the south lot, Mrs. Plamondon, is, whether the easement
was an apparent one at the time of her purchase. There is no
evidence in the record that at that time she had any actual
notice or knowledge that any flue in the party wall was being
or had been used by appellant for any purpose.

To affect her, the easement must have been obvious and
apparent to any observer; an *apparent sign* of servitude must
have existed on the part of the premises she purchased, in favor
of those of appellant; or, as expressed by some of the authori-
ties, marks of the burden must have been open and visible.
*Butterworth* v. *Crawford*, 46 N. Y. 349; Washb. Easements,
60, 88. At the time of Mrs. Plamondon's purchase, the entire
south side of the south wall of appellant's house stood exposed
to view; the projection forming the flue stood out from the
wall proper some eight inches, with the chimney thereon, and
rested visibly on the land she purchased. We are of opinion
that the easement claimed in the use of this flue by appellant
was indicated by the condition of the premises; that it was

obvious and apparent to any observer; that there were *apparent signs* of the servitude, and that the marks of the burden were open and visible, so as to satisfy the requirements of the authorities in such respect.

It is admitted that the projection in the wall indicated there was a flue there, but it is said that as it was on the south side of the wall it might have been taken as an indication that it was put there for the benefit of the building which might afterward be erected and joined on to the wall. But we think such would be a forced inference; that the reasonable conclusion should be, that the flue was constructed for the use of the building of which it constituted a part, and that the wall was to be used and enjoyed by the adjoining proprietors as a party wall, in the condition which it was then in, so far as respected this flue.

The decree dismissing the bill will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*