JASPER WEIDEKIN ET AL.

v.

JAMES SNELSON.

17    461
d207s¹350

1. DRAINAGE—EASEMENT.—Where the claim that a previous owner had established a system of drains upon the property now owned by others, and that having severed the heritage each subsequent owner took subject to the burden thus imposed, is sought to be established, the marks of the burden must be open and visible, and the easement must be apparent, necessary and continuous.

2. OBSTRUCTING ARTIFICIAL DRAIN.—In an action of trespass for the obstruction of certain artificial drains on the lower estate, where the natural flow of the water would be otherwise, and there was no right by prescription or contract, and no burden on the servient estate. *Held*, that the act of appellant in tiling and partly filling up the ditch, even if it produced the loss complained of, is a *damnum absque injuria* for which no action lies.

APPEAL from the Circuit Court of Christian county; the Hon. W. L. GROSS, Judge, presiding. Opinion filed December 4, 1885.

Mr. A. McCASKILL and Mr. W. M. PROVINE, for appellants; cited Peck v. Herrington, 109 Ill. 618; Com'rs, etc., v. Whitsitt, 15 Bradwell, 318; Gormley v. Sanford, 52 Ill. 162.

Mr. H. M. VANDEVEER, and Mr. JAMES M. TAYLOR, for appellee; cited Washburn on Real Property, 283, § 13; 288, § 16; Ingals v. Plamondon, 75 Ill. 118.

WALL, P. J. This was an action of trespass on the case, by Snelson, appellee, against Weidekin and Copenbarger, appellants, to recover for damages alleged to have been caused to the lands of the appellee by the obstruction of certain drains.

The appellee, Snelson, owns two forty-acre tracts lying north and south. Appellant, Weidekin, owns one forty-acre tract lying south of Snelson's, and the lands of appellant, Copenbarger, lie east of the land of Snelson and Weidekin.

Snelson's land is flat but drains to the south. There is or was a pond of several acres near the northeast corner of Weidekin's land and extending over his east line into the land of Copenbarger. Into this pond the water from a considerable part of Snelson's land would naturally flow, and when full it would spread out to the west, then southeast, running finally into a depression leading to a branch on the land of Copenbarger. South of this pond was a ridge of several feet in height. The evidence tends to show that one Hughes, who formerly owned the three forties now owned by Snelson and Weidekin, made some ditches by means of a plow, by which the water would flow more freely from the south part of Snelson's land into this pond, and that he also plowed a furrow across this ridge ; but this furrow or ditch was not sufficient to drain the pond, though when full the overflow would, to some extent, pass through it. Afterward, when Snelson and Copenbarger owned the lands as they do now, and when Weidekin was but a tenant of the land he now owns, the two former, at joint expense, deepened this furrow or ditch so as to drain the pond, and Snelson carried the ditch from the north edge of the pond up to the southeast corner of his land, there connecting with other drains on his premises. To this arrangement Weidekin made no objection, though he refused to bear any part of the expense or take any part in it, upon the ground that he had no interest in the matter, being only a tenant and not the owner.

Subsequently he bought the land, and still later he and defendant Copenbarger laid a tile drain extending through this ditch and the pond, and passing southwest into, and perhaps across, the land of Copenbarger, extending from the pond also in a northeastern course into Copenbarger's land. It is contended on behalf of Snelson that the tile drain operated unfavorably to him, and that the ditch was to an appreciable extent filled up so that it did not carry off the water as well as formerly, whereby his land was damaged in its rental value, and that he lost a good part of the crop of corn raised in 1881 —the year the tile drain was put in. The case was tried by jury and the plaintiff recovered a verdict for $300, upon

which, after overruling a motion for new trial, the circuit court rendered judgment.

It is not denied by appellants that under the law, as well settled in this State, Snelson had a right to insist that as his land was higher than Weidekin's, the water should be allowed to flow as by nature it would from the former to the latter, and that for any damages occasioned by an obstruction of such natural flow the plaintiff might recover.

It does not appear, however, that the plaintiff's claim is for such an interference, but is, rather, for obstructing this artificial drain on the land of defendant, Weidekin. It is true that counsel for appellee, in his brief, insists that the pond would overflow in the direction where the ditch now is, and an argument is drawn from this statement; but such a position can not well be maintained on the evidence in the record. The great weight of proof as we find it, after a careful reading, is otherwise, and it seems quite well established that, in a state of nature, the water accumulating in the pond when it was full would spread out west and then south and southeast, and that it was not until a furrow was cut across the ridge that any part of the overflow took that course, and it was not until the ditch was made by Snelson and Copenbarger that the pond was drained that way. So that the important question now is as to the duty of Weidekin and the correlative rights of plaintiff in respect to this artificial drain. So far as it is upon his land Weidekin has an undoubted right to obstruct or change it, or wholly dispense with it, as he may see fit, unless in so doing he infringes upon the rights of others.

Snelson can not claim a right by prescription for the reason that the time required by law to establish such a right has not elapsed. Nor can he claim under any contract with the defendant, or those with whom he is in privity. It is argued by counsel that a former owner, Hughes, had established a system of drains upon the whole property now owned by Snelson and Weidekin, and having severed the heritage, each subsequent owner takes subject to the burden thus imposed.

In such cases " the marks of the burden must be open and visible," and the easement must be apparent, necessary, and

continuous. Ingals v. Plamondon, 75 Ill. 118. There is no such burden to be inferred from the act of Hughes in plowing the furrow across this ridge. It is not reasonable that an easement should be established by so casual and insignificant an act. It lacks all the elements essential for such a purpose. But were it otherwise, it would seem impossible to base the plaintiff's claim upon this theory of the case, for the reason that had the furrow been left or kept in order as Hughes made it, the pond would not have been drained.

The plaintiff must recover then, if at all, upon the proposition that the defendants unlawfully and injuriously interfered with the ditch as it was made by plaintiff and Copenbarger. Assuming that the operation of laying the tile and subsequently filling up the ditch to the extent shown by the evidence obstructed the flow of water and produced the damage complained of, the question is whether the defendants are liable therefor.

The ditch was made before Weidekin became the owner of the land, and so far as the evidence shows, without the consent of the owner. Weidekin was the tenant and made no objection. He afterward bought. Had he owned the land when the ditch was made and consented thereto, his consent would have amounted merely to a license revocable at will, and for the revocation thereof there would be no liability. Woodward v. Seely, 11 Ill. 157; Kamphouse v. Gaffner, 73 Ill. 461; St. Louis Nat'l Stock Yards v. Wiggins' Ferry Co., 102 Ill. 514; Same v. Same, 112 Ill. 384. These cases settle the principle announced so clearly, and state it so fully, that we deem it only necessary on this point to refer to them. In Peck v. Herrington, 109 Ill. 611, the Supreme Court, while reiterating or restating the rule as to the general right of the owner of an upper field to have the water run therefrom to and over the lower field, take occasion to say that such owner can not construct drains or ditches so as to create new channels for water in the lower field, though he may, for the purposes of good husbandry, increase the discharge of water from his field into the regular and natural channels of the field below.

Weidekin v. Snelson.

We are of the opinion that the act of defendant Weidekin in tiling the ditch and partly filling it up, even if it produced the loss complained of, must be regarded as " *damnum absque injuria*," for which no action lies.

The trial court in its instructions to the jury adopted a different view of the legal rights of the parties, and in this there was such substantial error as requires a reversal of the judgment.

Upon the question of fact whether the plaintiff's loss is fairly attributable to the act of def endant, we have examined the proof with great care and are very strongly impressed with the belief that the finding in this respect is against the clear preponderance of the evidence.

We entertain little doubt that the verdict should have been the other way; and it is proper to say in this connection, that we think the trial court was unduly strict with the defendant in admitting and excluding evidence to the condition of the ditch and its capacity to carry off the water aft er the tile was laid. However, on the evide nce that was admitted, we regard it a reasonable conclusion that the re was as ample facility for draining all the water that came into the pond after the tile was laid as before, and that the plaintiff's loss, whatever it may be, is due to other causes.

It appears that since the tile was put in, Weidekin has always raised good crops on the ground formerly covered by the pond, and it is not easy to understand how a system of drainage that benefits him at this place can injure the plaintiff at other and higher places which naturally drain to this.

Other features of the case tending to the same view might be referred to, but we do not care to further discuss a mere question of fact, about which there is more or less conflict in the evidence; and we also pass without examination the point that there is not sufficient proof to hold Copenbarger as a co-defendant with Weidekin. The judgment of the circuit court will be reversed and the cause remanded.

Reversed and remanded.