(17 Misc. Rep. 655)

PEABODY v. CHANDLER.

(Supreme Court, Trial Term, Franklin County.   May, 1896.)

1. WAYS—CREATION—ADOPTION OF EXISTING ROUTE.
    Where a deed gives a right of way over land without designating the route, but there is at the time a way in use by the grantee, of which the grantor had knowledge, it will be presumed that the parties had that route in mind.

2. SAME—LOCATION BY GRANTEE—ACQUIESCENCE BY GRANTOR.
    Where the grantee of a right of way which is not defined by the deed selects a route, and uses it for several years to the grantor's knowledge, such selection and use fix the location.

Action by R. Singleton Peabody against Julia P. Chandler for an injunction.   Judgment for plaintiff.

S. A. Beman, for plaintiff.
F. G. Paddock, for defendant.

McLAUGHLIN, J.   It is conceded that the plaintiff has a right of way over the defendant's land, and the controversy which is the subject-matter of this action is as to its location.   The facts, so far as they are material, and concerning which there is little dispute, are as follows:   In 1880 one E. R. Derby was the owner or in possession of a large tract of land in Franklin county, and which included what is known as "Prospect Point," on the Upper Saranac Lake.   Derby was then engaged in running a summer hotel known as the "Prospect House," but since known as the "Saranac Inn." This house is located on Prospect Point.   Some time during the season of 1880 the plaintiff entered into a contract with Derby for the erection of a cottage at the westerly end of Prospect Point, and for the construction of a road or way from it to the hotel.   In pursuance thereof, Derby did within a short time thereafter erect the cottage and open the road.   Plaintiff immediately went into possession of the cottage, and from that time down to 1893 occupied it during the summer season, and used the road in going to and from the hotel where, under the terms of the contract, he took his meals.   In March, 1886, the parties to this action, with others, jointly acquired title to all of the land which Derby held in 1880, including Prospect Point and the Saranac Inn.   Shortly after acquiring this title they determined to divide among themselves a portion of Prospect Point in such a manner that each would have the entire title to a small lot, while the balance of the purchase, including the hotel, they would hold as tenants in common.   For the purpose of making this division a portion of Prospect Point was subdivided into lots extending across the peninsula, and each being bounded on the north and south by the waters of the lake.   The contemplated division was on the 24th of June, 1886, consummated by the execution and delivery

of mutual deeds, each of which was signed by all of the owners except the grantee. In the several deeds the parties are described as composing an association, but it was conceded on the trial that no association existed at the time the deeds were made. The plaintiff in this action took title to the lot on the extreme westerly end of Prospect Point, the defendant took title to the lot next to and adjoining the plaintiff on the east, and one Dunton took title to the lot next to and adjoining the defendant on the east, etc. At the time of the execution and delivery of these deeds a portion of the lands deeded had been laid out, and was then being used, in connection with the Saranac Inn, as a lawn; and, for the evident purpose of maintaining the same as a lawn in the future, the following provision was inserted in all of the deeds:

"And it is also further covenanted and agreed that no buildings or erections shall hereafter be constructed, nor fences made, upon the grounds heretofore and at present used as a lawn, lying southerly or southwesterly of said hotel, and being southerly of a line drawn from the northwest corner of the main building of the hotel proper westerly to a cedar post marked 'P,' set in the margin of the lake at the westerly end of said peninsula, except upon the written consent of the said association, or their heirs or assigns, or except for extensions to said hotel within the hotel lot, and that the said grounds or lawn above mentioned shall be held and kept open for all proper use and enjoyment of said association, its members, representatives, and assigns, and of the proprietors, lessees, agents, and guests of the hotel, and the occupants of cottages and cabins around and about said hotel."

Immediately following the last word "hotel," in the clause just quoted, and as a part of the same sentence, there appears in all of the deeds, except the deed to the plaintiff,—in which it does not appear,—the following:

"With free ingress and egress and proper right of way to the parties occupying lots or premises on said peninsula westerly of the premises hereby conveyed."

The plaintiff insists that the right to pass over the defendant's land, reserved to him in her deed, is at the place where the way was constructed by Derby in 1880, and which he was using at the time this deed was given, and which he continued to use until 1893, when the further use of it was prevented by the defendant. In October, 1893, the defendant commenced the erection of a cottage on her lot, and so located it that further use of this way was prevented; the defendant insisting that she had the right to obstruct this way, and to there locate her cottage, as the right reserved by the plaintiff in the deed to her to pass over her lot is across that portion reserved as a lawn. As to which contention is correct, depends entirely upon the construction put upon the defendant's deed. In order to reach a correct conclusion, it becomes necessary to determine just what the parties intended in defendant's deed by the use of the words, "with free ingress and egress and proper right of way to the parties occupying lots or premises on said peninsula westerly of the premises hereby conveyed." For the purpose of ascertaining this intent, it is proper for the court to look at all the surrounding circumstances, the relation of the parties, the

purpose of the respective grants. It is also proper to look at what each of the parties has done since the deed was given, with the view of determining the construction which each has placed upon these words themselves. It is a well-recognized principle that where an instrument is of doubtful construction, and the parties themselves have construed it, either by affirmative acts on the one side, or by acquiescence in assumed or asserted rights on the other, such construction will be largely followed by the court in subsequently construing it. Taking into consideration all of these facts, and applying the foregoing principle, the construction is not difficult. At the time the defendant acquired her title there was a road extending from the plaintiff's cottage across her lot, at a given point, to the hotel. This way was open, visible, and well known to the defendant. It was the only way which the plaintiff was then using in going to and from his cottage to the hotel. The defendant had then used it, and for several years thereafter the plaintiff continued to use the same way in this same manner that he had theretofore used it, without any objection from the defendant. So far, therefore, as the acts of the parties from the time defendant acquired her title, in 1886, to the erection of her cottage, in 1893, aid in construing the deed, it shows that the right of way intended was the one plaintiff was using at the time the deed was given. It is true that the deed itself does not designate the precise place on the defendant's lot over which the plaintiff may pass, but, a way being open, visible, and in use at the time the deed was given and accepted, of which both parties had knowledge, it seems to me that that way must have been the place that the parties had in mind. And, if not, then the acts of the parties since then locate it. The plaintiff having selected the place where he would cross the defendant's lot, and used it for seven years to defendant's knowledge, such selection and use fix the location, and fix it in such a manner that neither of the parties can thereafter change it. It would certainly be unjust to the defendant to permit the plaintiff— he having once located the right of way contemplated by the deed— to thereafter change it and cross her lot at any other point, and it would be equally unjust to the plaintiff to permit the defendant to compel him to do so. Wynkoop. v. Burger, 12 Johns. 222. The plaintiff having once selected, with the consent or acquiescence of the defendant, the place where he would cross her land,—a right reserved to him in general terms in the deed to her,—that right, which was before indefinite, at once becomes fixed and certain. Onthank v. Railroad Co., 71 N. Y. 194, and cases cited; Washb. Easem. 225, 240. As was said by Bigelow, J., in Jennison v. Walker, 11 Gray, 423:

"When the right granted has been once exercised in a fixed and definite course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. * * * This rule rests on the principle that when the terms of the grant are general or indefinite, so that its construction is uncertain and ambiguous, the acts of the parties contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties." .

The language of the court in Bannon v. Angier, 2 Allen, 128, is quite applicable:

"Where a right of way or other easement is granted by deed, without fixed and defined limits, the practical location and use of such way or easement by the grantee under his deed, acquiesced in by the grantor at the time of the grant, and for a long time subsequent thereto, operate as an assignment of the right, and are deemed to be that which was intended to be conveyed by the deed, and are the same in legal effect as if it had been fully described by the terms of the grant.".

But, upon a strict construction of the defendant's deed, I do not think that the plaintiff would have a right to construct a way across that portion of her land reserved for a lawn. The general purpose, as evidenced by her deed, and the other deeds delivered at the same time, is to reserve for all time to come this portion of the property deeded for a lawn,—not only for all the parties owning lots on the Point, but for the benefit of the other property retained and held in common, and especially the hotel. Hence the provision in her deed that:

"No buildings or erections shall hereafter be constructed, nor fences made, upon the grounds heretofore and at present used as a lawn, * * * and that the said grounds or lawn above mentioned shall be held and kept open for all proper use and enjoyment of said association, its members, representatives, and assigns, and of the proprietors, lessees, agents, and guests of the hotel, and the occupants of cottages and cabins around and about said hotel."

The intent of the parties to the grant is plain to be seen, and that is that the lawn is. to be preserved as it then existed; and for this purpose a covenant is inserted, binding not only upon the parties, but binding upon and running with the land itself. A general right of way across the lawn is, to my mind, entirely inconsistent with, and repugnant to, this provision in defendant's deed. A road, with gutters, culverts, raised walks, if necessary, would largely destroy this portion of the land for a lawn. The parties owned the entire tract, and, while they were executing mutual deeds of small building lots on the peninsula, they still held in common the title to the balance of the property, including the hotel, and they were desirous of so retaining and preserving it that its value would not be impaired. This purpose is quite manifest, not only in defendant's deed, but also in the other deeds executed and delivered. It is manifest, by the restrictions mutually imposed upon the use of all the lots deeded at the same time, each grantee is restricted in the use and occupation of the land deeded. These restrictions are in perpetuity,— binding not only upon the parties, but their heirs and assigns. An easement was thus created in each of the lots, not only for the benefit of all of the lots on Prospect Point, but for the benefit of the hotel property. "A reciprocal easement," says Judge Allen in Trustees v. Lynch, 70 N. Y. 447, "of this character, may be created upon the division and conveyance in severalty to different grantees of an entire tract; and they may be created by a reservation in the conveyance, by a condition annexed to a grant, or by a covenant, and even a parol agreement of the grantees." See, also, Curtiss v. Ayrault, 47 N. Y. 73. It seems to me entirely clear that that portion of defendant's land reserved for the lawn cannot be used for any

other purpose; that it was not intended by either of the parties that it should be used for a general right of way. And what leads me irresistibly to this conclusion are the words, "proper right of way to the parties occupying lots or premises on said peninsula westerly of the premises hereby conveyed," in defendant's deed, and which do not appear in plaintiff's deed. No one would contend that a right of way could be constructed by either of the parties across the lawn, except for this provision, because, by express terms, the lawn is "to be kept open." If it is "to be kept open," and there being no such provision in the plaintiff's deed, then, in order to get to and from his cottage, he must, of necessity, pass over some part of the defendant's land which is not reserved for the lawn. This the parties to the grant understood at the time defendant acquired title. Hence this clause in her deed gives plaintiff that right.

I think the plaintiff is entitled to judgment establishing a right of way over defendant's land,—such way to be located where it was in 1886, and which he used from that time to 1893; that defendant be directed to remove from such way any and all obstructions placed therein; together with six cents damages, besides the costs of this action. Judgment is directed accordingly; the form of the judgment to be agreed on, or settled by me on notice.