## MORRIS v. BLUNT ET AL.

No. 2814.   Decided December 5, 1916.   Rehearing denied December
30, 1916 (161 Pac. 1127).

1. DEDICATION—REQUISITES AND SUFFICIENCY. Since a dedication
   rests primarily in the owner's intent, there must be a conces-
   sion intentionally made by him, provable by declarations or
   acts, or inferred from circumstances, though no form or cere-
   mony is necessary, but it must appear that he knew of the
   public use and intended to grant to the public the right to such
   use.   (Page 249.)

2. DEDICATION—EVIDENCE—SUFFICIENCY.   Evidence  *held*  insuffi-
   cient to show dedication of highway to public use.   (Page 250.)

3. DEDICATION—REVOCATION.  If a highway is established by dedi-
   cation and acceptance by the public, it continues to be a high-
   way as long as public use continues, regardless of attempted
   revocation by the dedicator.   (Page 250.)

4. DEDICATION—USE—PUBLIC NATURE.  Where the users of an al-
   leged dedicated highway were of three classes, one using by a
   grant in a deed, another by the right of entry collateral to a
   canal easement, and the third by a right or claim not dis-
   closed by the evidence, but using merely for egress from their
   own private land, there was no public use of the highway.
   (Page 250.)

5. HIGHWAYS—"PUBLIC THOROUGHFARE."  A "thoroughfare" is a
   place or way through which there is passing or travel, and be-
   comes "public" when the public have a general right of pas-
   sage.   (Page 250.)

6. DEDICATION—USE OF WAY UNDER PRIVATE GRANT—EFFECT.  Under
   Comp. Laws 1907, section 1115, providing that a highway shall
   be deemed to have been dedicated to the use of the public when
   continuously used as a public thoroughfare for ten years, use
   under private right is insufficient to show dedication, and such
   use, however long, does not make the way public, and the mere
   fact that the public also use it without objection from the owner
   will not make the way public.   (Page 250.)

7. EASEMENTS—PRESCRIPTIVE RIGHT—HIGHWAYS.  A prescriptive
   easement does not arise in seven years by analogy to the statute
   barring action to recover realty when a plaintiff was not seized
   of the property within seven years, such statutes not applying
   to rights of way or easements, but prescriptive right can

arise only by adverse use and enjoyment under claim of right uninterrupted and continuous for twenty years. (Page 252.)

8.  EASEMENTS—PRESCRIPTION—EVIDENCE—SUFFICIENCY.      Evidence *held* insufficient to show acquisition of highway easement by prescription; the use having been interrupted at various times during the alleged prescriptive period. (Page 252.)

9.  EASEMENTS—GRANT BY DEED—EFFECT.   While a deed of a part of a tract conveying it, "together with all the appurtenances," would convey an existing highway easement, it would not serve to create an easement. (Page 253.)

10.  EASEMENTS—GRANT BY DEED—REQUISITES AND SUFFICIENCY. Generally, when the owner of a tract of land has arranged and adapted various parts, so that one derives a benefit from the other of a continuous and obvious character, and he sells one part without mentioning the incidental advantage or burdens of one in respect to the other, there is implied an understanding that such advantages and burdens continue. (Page 254.)

11.  EASEMENTS—SEVERANCE—REQUISITES AND SUFFICIENCY.   Elements essential to constitute easement by severance are unity of title followed by severance, an apparent, obvious and visible servitude at the time of severance, reasonable necessity to the enjoyment of the dominant estate, and it must usually be continuous and self-acting. (Page 254.)

12.  EASEMENTS—WAYS OF NECESSITY—REASONABLE NECESSITY OF USE.   An easement by severance in a right of way apparent at the time of severance does not exist except so far as is reasonably necessary to the use of the dominant estate, and the fact that a house on the severed tract faced toward an extended way not necessary to access did not give an easement thereon. (Page 255.)

13.  EASEMENTS—GRANT BY DEED—LOCATION.   Generally on severance of title, if the deed conveys a right of way across land still held by the grantor, but does not fix its course or extent, and at the time of conveyance there was in use on the land reserved such a way plainly visible, and known to the parties, it will be deemed to have been intended by the grantor to be conveyed. (Page 256.)

14.  EASEMENTS—CONVEYANCE—INSTRUCTIONS.   In construing any grant of right of way, the use, in character and extent, is limited to such as is reasonably necessary and convenient to the dominant estate and as little burdensome to the servient estate as possible for the use contemplated. (Page 257.)

Appeal from District Court, Third District; Hon. *J. A. Howell,* Presiding Judge.

Suit by Joseph N. Morris against Joseph Blunt, administrator of the estate of Jane Kersey, deceased, and others.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*C. W. Collins* for appellants.

*A. A. Duncan* for respondent.

LOOFBOUROW, District Judge.

This action was brought in equity to quiet title to certain lands and to restrain the defendants from interfering with the plaintiff's peaceable possession of the same. The plaintiff alleges title to the land and that the defendants wrongfully removed fence posts placed thereon by plaintiff, and threaten to remove them as often as plaintiff replaces them, and that defendants at divers times have crossed over said land with vehicles and on foot, and will continue to so interfere with the peaceable possession of plaintiff unless restrained, and plaintiff prays for a decree quieting title and enjoining the defendants from trespassing on said land.

The defendants admit that plaintiff owns the land in question, but they claim a right of way across a part of said land for themselves, and that the roadway so used by them is a public highway. They admit that one of the defendants removed from said roadway certain posts placed thereon by plaintiff, and that they travel said road, but deny that they are trespassers thereon. They allege that on October 8, 1887, the plaintiff conveyed by warranty deed to Jane Kersey, now deceased, and through whom the defendants claim, the land that the defendants now occupy and which lies directly to the north of plaintiff's land, the boundary line being the north side of a canal running east and west between the two tracts, with all appurtenances thereto, and a right of way for ingress and egress over and across the lands of plaintiff with

vehicles and domestic animals, that for fifteen years prior
to the making of said deed, and at the time of said convey-
ance, the road in question existed and was and had been used
by the public, and that it was a well-defined, clearly marked
road, and allege that the plaintiff has, by various acts, at-
tempted to interfere with the use of said highway; and the
defendants ask that their right in said road be decreed to them,
and that the plaintiff be enjoined from further interfering
with the peaceable possession of said right by the defendants.
The following sketch will explain the situation of the lands
of the respective parties, the location of the canal, and the
right of way in dispute:

The district court made findings of fact to the following
effect, to wit:   That the deed in question was executed and
delivered by the plaintiff, Joseph N. Morris, to Jane Kersey on
October 8, 1887, and that, after describing the land by metes
and bounds, it contained the following clause:

''Together with a right of way for ingress and egress to
said land from east line of said section over a strip of land
one rod wide along the south side of and following the course
of said Utah & Salt Lake Canal, said right of way to include
the right of ingress and egress to and from said land first above
conveyed with vehicles and domestic animals of all kinds at
any and all times.''

That subsequent to said conveyance said Jane Kersey died,
leaving the defendants, except Joseph Blunt, her heirs, and
that Joseph Blunt is the administrator of the estate of the

said Jane Kersey, deceased. That the road in question is not, and never was, a public highway. That the canal through the lands in question has a shoulder or bank about eighteen inches above the general level of the land and extending from 1 to 1½ rods south from the water's edge and along the south side of said canal. That the meaning of the phrase ''a strip of land one rod wide along the south side of and following the course of said Utah & Salt Lake Canal'' is that the south side of said canal is the outer edge of said shoulder or bank, and that the right of way specifically mentioned in the deed extends along the south or outer edge of said shoulder and extends from the east section line westerly along the course above indicated parallel to and 1½ rods south of the high-water mark, following the meanderings thereof, more or less, to a point directly south of the southeast corner of defendants' land; thence westerly 2½ rods; thence north across the canal to the land of the plaintiff, thereby leaving a square 2½ rods each way for the purpose of turning and crossing the canal. That the defendants have no right or interest in the lands of the plaintiff other than as above indicated. The court issued an injunction restraining the defendants from in any manner interfering with the use by plaintiff of the lands owned by him, except as above indicated, thus closing to the defendants the road from about the southeast corner of defendants' land to the point where said road formerly crossed the canal a distance of about twenty rods.

The defendants at once perfected this appeal, assigning numerous errors which are specifically as follows: (1) That the court was wrong in its findings that the whole road was not a public highway; (2) wrong in its finding and conclusion that the strip of road about twenty rods in length from the east line of the defendants' land westerly to the point where formerly said road crossed the canal, did not pass to the defendants under the deed mentioned as an appurtenance to the land.

Upon examining the record and the evidence, we find that this suit was filed June 20, 1914. The evidence shows that on October 8, 1887, when Jane Kersey became the owner of the land now held by the defendants by a conveyance from

the plaintiff, the road extended west of the east line of her property about twenty rods, and then turned north across the canal; that the road before that time had continued on west on the south side of the canal from that point through the section, and some of the people who lived to the west and those working on the canal traveled said road frequently; that it was unimproved, marked only by wheel tracks which were plainly visible; that it was open, without gates; that there were no signs to the effect that it was a private highway, and that there never have been such signs along the road; that the house bought by Jane Kersey, with the land, faced toward this road that extended west of the point where the district court found it turned north across the canal; that the Kersey place has been continuously occupied, and the occupants and the visitors traveled the road to and from the house; that there has been no change in the location of the road; that it is in substantially the same position on the ground now that it was twenty-seven years ago; that in making and cleaning the canal the excavated material and debris were thrown out on the south side of the canal, making the surface of the ground rough and uneven for a distance of 1 to $1\frac{1}{2}$ rods along the south side of the canal and through its entire length upon the land in question; that numerous boulders were thrown out of the canal; that no bridge existed at the point where defendants contend the road should cross the canal; that in about 1912 the plaintiff plowed the road to the canal bank, and that frequently, in plowing the lands adjoining the road, plaintiff deposited boulders from his land upon the road; that the defendants, with shovels, leveled the road and threw the rocks to the north toward the canal, and continued to travel the road as before; that in 1914 plaintiff set posts in the roadway where defendants crossed the canal, turning north, and that the defendants, or some of them, removed said posts and threw them aside and continued to cross at that point; that plaintiff closed the road on the south side of the canal running west from the defendants' present crossing in about 1910; that the road was plowed by plaintiff in about 1904; that in about 1907 plaintiff placed a wire gate at the public highway along the east line of the section; that

defendants objected and cut it down; that the water in the canal is about sixteen feet wide; that the company does not have title to the land covered by the canal, and claims only by usage; that there is no bridge across the canal to the Jane Kersey place.

It will be seen that the defendants' complaint in this court is as to that part of the decree that turns the road across the canal at about the southeast corner of the defendants' land, instead of permitting an extension of twenty rods to the west, and then turn north across the canal as it did formerly.

They rely upon three grounds to hold the road in question, to wit: (1) That by long continual use it has become a public highway; (2) that by their and Mrs. Kersey's use they have an easement by prescription; (3) that said road was granted by said deed, both by the description of a road one rod wide, specially described, and also by reason of said road being appurtenant to the land conveyed in the deed. We will examine these questions in order:

First, that by long continual use the twenty rods of road in question has become a public highway; that is, that there has been a dedication by the owner to the public use and an acceptance by the public.

A dedication rests primarily in the intent of the owner. There must be a concession intentionally made by him, which may be proved by declarations or by acts, or may be inferred from circumstances. No form or ceremony is necessary. It must, however, appear that he knew of the use by the public, and intended to grant the right of way to the public. No formal acceptance by any public officer or agent is necessary, but there must be actual use by the public. *City of Cincinnati* v. *White*, 6 Pet. 440, 8 L. Ed. 452; *Morgan* v. *Railroad Co.*, 96 U. S. 723, 24 L. Ed. 743; *Harkness* v. *Woodmansee*, 7 Utah 227, 26 Pac. 291; *Whittaker* v. *Ferguson*, 16 Utah 240, 51 Pac. 980; *Schettler* v. *Lynch*, 23 Utah 305, 64 Pac. 955; *Culmer* v. *Salt Lake City*, 27 Utah 252, 75 Pac. 620; *Wilson* v. *Hull*, 7 Utah 90, 24 Pac. 799.

From the evidence, it appears that the plaintiff, two years before the commencement of this action, plowed the road to the canal bank; that frequently in plowing lands ad-

joining the road plaintiff rolled boulders from the land    **2, 3**
into the road, which the defendants removed before
they could travel the road; that plaintiff closed the road ex-
tending west from the Kersey crossing five years before the
commencement of this action; that a wire gate was placed by
the plaintiff across the entrance to the road on the east sec-
tion line seven years before the commencement of this action;
and that the road was plowed by the plaintiff as much as ten
years before the commencement of this action.

All these facts negative an intention on the part of the
plaintiff to dedicate to public use. On the contrary, the fair
inference to be drawn from them is that he intended not to
dedicate the roadway to the public. It is true that, a dedica-
tion by the owner and an acceptance by the public once made,
the highway thus established continues to be a highway as
long as the public use continues; and if in this case the public
use were sufficient to constitute an acceptance and the owner
had in fact intended to dedicate, then the dedication would
be complete; but we think there is no evidence tending to
show that there ever was an intent to dedicate to public use.

Next we must consider the people who used this road. Did
their traveling upon it constitute a use by the public?
The evidence discloses three classes of persons only **4, 5, 6**
who used this road, to wit, the occupants of the Kersey
place and their visitors, the workmen upon the canal, and
some persons who lived in the middle of the section.

As to the occupants of the Kersey place, they had an
express grant of a right of way for ingress and egress con-
tained in their title deed (not considering now the extent
or limitation of the right conveyed in the deed), so they
were not traveling the road by reason of its public character,
but under the express provision of their deed.

As to the workmen upon the canal, they were there under
the right by "user" claimed by their company. The right
of way for their canal, whatever it is, if it authorizes the
occupancy of the land for canal purposes, carries with it the
right, under reasonable limitations to enter the premises to
construct, repair, and operate the canal, its headgates, its
laterals, etc., which are a part of or connected therewith. So

these persons were not on this road by reason of its public character, but under whatever right by "user" the canal company had over this land for canal purposes.

As to the persons who lived in the center of the section, the evidence does not disclose how many there are or ever were, how frequently they used the road, by what right they traveled the road, nor the circumstances of their use, nor that they have in any way improved their property depending upon the public use of the road, nor that they are in any respect so situated that closing the road will be an injury to them. Compare the case made as to them with the situation disclosed by the evidence in the case of *Schettler* v. *Lynch*, 23 Utah 305, 64 Pac. 955.

However, the people in the middle of this section are not in court, and their rights are not being determined. Their use of the road is material here only so far as it may have a bearing upon its public character, and the evidence as to their use of the road in question is very meager.

Compiled Laws of Utah 1907, section 1115, provides:

"A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."

A "thoroughfare" is a place or way through which there is passing or travel. It becomes a "public thoroughfare" when the public have a general right of passage. Under this statute the highway, even though it be over privately owned ground, will be deemed dedicated or abandoned to the public use when the public has continuously used it as a thoroughfare for a period of 10 years, but such use must be by the public. Use under private right is not sufficient. If the thoroughfare is laid out or used as a private way, its use, however long, as a private way, does not make it a public way; and the mere fact that the public also make use of it, without objection from the owner of the land, will not make it a public way. Before it becomes public in character the owner of the land must consent to the change. Elliott, Roads and Streets, section 5.

From a consideration of the facts in evidence, viewed in the light of the well-established principles of law, we must con-

clude, as did the trial court, that there is disclosed no such
intention on the part of the owner of the land to dedicate
to public use, nor such use by the public constituting an
acceptance as is necessary to show a dedication or abandon-
ment to public use.

The second contention of the appellants is that by
their and Mrs. Kersey's use they have an easement by
prescription.

 "The right to a public road or private way by prescription arises
from the uninterrupted adverse enjoyment of it under a claim of
right know to the owner for the requisite length of time. Anciently
the right to the easement arose by prescription from the use of the
land for so long a time that there was no existing evidence as to
when such use commenced. Its origin must have been at a time
'whereof the memory of man runneth not to the contrary.' Later
the rule was changed by limiting the time of uninterrupted posses-
sion to 20 years." *Harkness* v. *Woodmansee*, 7 Utah, 229, 26 Pac. 292.

 "Prescription refers the right to the highway to the presumption
that it was originally established pursuant to law, by proper author-
ity; while dedication refers it to a contract either expressed or im-
plied. Dedication implies a conveyance and an acceptance, while
prescription requires an unbroken possession or use under claim of
right." Elliott, Roads and Streets, § 191.

A prescriptive right to an easement does not arise in seven
years, by analogy to the provision of the statute barring an
action to recover real property when the person asserting
title was not seized or possessed of the property in question
within seven years. These statutes do not apply to rights of
way or any other class of easements by prescription. The right
by prescription can only arise by adverse use and enjoyment
under claim of right uninterrupted and continuous for a pe-
riod of twenty years. *Harkness* v. *Woodmansee*, 7 Utah 227,
26 Pac. 291; *Funk* v. *Anderson*, 22 Utah 238, 61 Pac. 1006;
*North Point Co.* v. *U. & S. L. C. Co.*, 16 Utah 271, 52 Pac.
168, 40 L. R. A. 851, 67 Am. St. Rep. 607; *Lund* v. *Wilcox*,
34 Utah, 205, 97 Pac. 33.

A prescriptive right in the public is disposed of by our
conclusion, heretofore reached, that the evidence does not
show use by the public, and that this was not a public
highway; but there is still the question of a private

right of way by prescription. Under the well-established rule, the use, in order that it may ripen into a prescriptive title, must, in any case, not only be adverse and continuous, and under claim of right for a period of twenty years, but it must be uninterrupted throughout that period. In the case at bar the use of the defendants and their predecessors commenced in 1887, at which time there was a severance of the title to the parcels of land, and could not ripen into title by prescription until 1907. But the defendants' own testimony shows that the plaintiff plowed the road in question as early as 1904, and from that time to the commencement of this action the plaintiff, from time to time, placed rocks in the road, from the plowed land adjoining, and that the defendants, with shovels, leveled the ground and removed the rocks to the north to make the road passable; and following these acts, and clearly indicating the attitude of each of the parties to this suit to the claim of the defendants to the ownership of this right of way at about the time the twenty-year period would have expired, plaintiff placed a wire gate across the road at the point where it left the public highway, and the defendants cut it down. From these circumstances we conclude that the use was not uninterrupted, and that no right by prescription could arise under these circumstances. *Wasatch Irrig. Co.* v. *Fulton,* 23 Utah 466, 65 Pac. 205; *Crosier* v. *Brown,* 66 W. Va. 273, 66 S. E. 326, 25 L. R. A. (N. S.) 174; *Reid* v. *Garnett,* 101 Va. 47, 43 S. E. 182; *Wooldridge* v. *Coughlin,* 46 W. Va. 345, 33 S. E. 233.

The third contention made by appellants is that the road was granted by deed both by the description of a road one rod wide, specially described, and also by reason of said road being appurtenant to the land conveyed in the deed. The deed contained the very usual clause, following the specific description of the real estate, to wit, "together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining." Whatever passed under this clause as an appurtenance must have been an existing easement at the time of the making of the deed; *i. e.,* such rights were conveyed by this

clause as were then belonging or in any wise then apper-
taining to said land. But during the unity of title no ease-
ment could exist as between parts of the land. An owner
cannot have an easement in his own land because during the
unity of title all the benefits and uses for easement are com-
prehended within his general ownership. Such a clause in
a deed will not create a new right, nor, in case of severance
of title, will it convey a right to a use for the benefit of
one part of the land over another part. Such a right, if it
is conveyed, must be by definite language which first creates
or defines the easement and then conveys it. *Duvall* v. *Ridout,*
124 Md. 193, 92 Atl. 209, L. R. A. 1915C, 345.

An appurtenance implied upon a severance of title is re-
ferred to the intent of the grantor, and such intent is gath-
ered from conditions existing at the time of the sever-
ance of title and implied from such circumstances; and
in general terms, the rule may be stated that when the
owner of a tract of land has arranged and adapted the va-
rious parts so that one derives a benefit and advantage from
the other of a continuous and obvious character, and he sells
one of the parts without making mention of the incidental ad-
vantage or burdens of one in respect to the other, there is im-
plied an understanding and agreement that such advantages
and burdens continue as before the separation of title. *Ingals*
v. *Plamandon,* 75 Ill. 118; *Carbrey* v. *Willis,* 7 Allen (Mass.)
364, 83 Am. Dec. 688; *Scott* v. *Moore,* 98 Va. 668, 37 S. E.
342, 81 Am. St. Rep. 749; *Grace M. E. Church* v. *Dobbins,*
153 Pa. St. 294, 25 Atl. 1120, 34 Am. St. Rep. 706; *Quinlan*
v. *Noble,* 75 Cal. 250, 17 Pac. 69.

The elements essential to constitute an easement by sever-
ance are: (1) Unity of title followed by severance; (2) that
at the time of the severance the servitude was apparent,
obvious, and visible; (3) that the easement is reasona-
bly necessary to the enjoyment of the dominant estate;
and (4) it must usually be continuous and self-acting,
as distinguished from one used only from time to time when
occasion arises.

We pass the fourth requirement, as to which there is a

clear conflict in the decided cases. There are decisions by courts of final jurisdiction in the various states holding that the servitude, in order to pass as implied upon severance, must be of a continuous nature, *i. e.*, one which may be enjoyed without the act of man, as a right to conduct water through a spout which discharges water automatically whenever rain falls. *Bonelli Bros.* v. *Blakemore*, 66 Miss. 136, 5 South. 228, 14 Am. St. Rep. 550; *Fisk* v. *Haber*, 7 La. Ann. 652.

On the other hand, courts hold that the kind of easement is not to be considered, but merely whether it is apparent, designed to be permanent, reasonably necessary to the enjoyment of the property, and arises from a severance of a unified title. *Baker* v. *Rise*, 56 Ohio St. 463, 47 N. E. 653.

As to the first essential, *i. e.*, unity of title followed by severance, that, in this case, is admitted. As to the second, that the servitude was apparent, obvious, and visible at the time of severance, the undisputed evidence **12** is to the effect that at the time of severance the way in question was a well-defined, though unimproved, driveway. However, as to the third essential, *i. e.*, that the servitude is reasonably necessary to the enjoyment of the dominant estate, there is serious doubt. It must be borne in mind that the issue presented in this case is not whether the defendants shall have a roadway from their land to the public highway on the east—that far the way was decreed to the defendants by the district court—but whether or not this roadway shall end at the southeast corner of defendants' land, or extend twenty rods west, still over the plaintiff's land, and then across the canal, and enter the land of defendants. So the question here is whether or not the evidence discloses a reasonable necessity for perpetuating the twenty rods of roadway west from the southeast corner of defendants' land. The only evidence upon this subject is that the dwelling house upon the defendants' land, which was there at the time of severance, faced south some distance from and toward the canal and the extended roadway. Does this disclose that the extension of the roadway, which the defendants seek, is reasonably necessary to the proper enjoyment of the property conveyed, or that this extension of the roadway materially adds to the value of

the land? We think not. From a careful consideration of the conditions and circumstances of the property at the time of severance, as disclosed by the evidence, we cannot find that there is any advantage whatever to the defendants' property in continuing the roadway past the southeast corner of defendants' land as decreed by the district court.

That there must exist a reasonable necessity is apparent from an examination of the decided cases. Some of these cases go to the extent that, in order to create a servitude upon severance, there must be shown an absolute necessity. However, the requirement of reasonable necessity seems to be supported by the weight of authority and by reason. *Weidekin* v. *Snelson*, 17 Ill. App. 461; *Dolliff* v. *Boston and M. R. R.*, 68 Me. 173; *Wentworth* v. *Philpot*, 60 N. H. 193; *Brakely* v. *Sharp*, 9 N. J. Eq. 9; *Evans* v. *Dana*, 7 R. I. 306; *Jarvis* v. *Seele Mill Co.*, 173 Ill. 192, 50 N. E. 1044, 64 Am. St. Rep. 107; *Root* v. *Wadhams*, 107 N. Y. 384, 14 N. E. 281; *Wells* v. *Garbutt*, 132 N. Y. 430, 30 N. E. 978; *McElroy* v. *McLeay*, 71 Vt. 396, 45 Atl. 898; *Paine* v. *Chandler*, 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99; *Kelly* v. *Dunning*, 43 N. J. Eq. 62, 10 Atl. 276; *Miller* v. *Hoeschler*, 126 Wis. 263, 105 N. W. 790, 8 L. R. A. (N. S.) 327; *Ogden* v. *Jennings*, 62 N. Y. 526; *Sellers* v. *Texas C. R. Co.*, 81 Tex. 458, 17 S. W. 32, 13 L. R. A. 657.

Within this third proposition is included the contention that the roadway is extent, as is existed at the time of the conveyance, passed under the express terms of the deed **13** by the description of "a right of way for ingress and egress to said land from the east line of section over a strip of land one rod wide along the south side of and following the course of said Utah & Salt Lake Canal," by reason of the fact that at the time of the conveyance there was upon the land such a right of way in use and known to the parties to the deed. The rule may be stated generally that upon the severance of title, if the deed contains a clause conveying a right of way across the land still held by the grantor, but not fixing its course and extent, and it is made to appear that at the time of conveyance there was in use upon the land reserved such a way plainly visible, and known to the par-

ties, it will be deemed that the way intended by the grantor is the one actually in existence. *Gerrish* v. *Shattuck*, 128 Mass. 571; *O'Brien* v. *Schayer*, 124 Mass. 211; *Peabody* v. *Chandler*, 17 Misc. Rep. 655, 40 N. Y. Supp. 1028: *Bannon* v. *Angier*, 2 Allen (Mass.) 128.

This rule of law is well established, and is highly beneficial, but the cases to which we must look for illustrations of its application are from communities where conditions as to marked boundaries and inclosures are, and for a long time have been, fixed and settled, and in which its application is much more easily made than in a community such as that involved in this case. This community, as disclosed by the evidence, during the years involved, was in process of settlement, and the whole country was but recently largely open, and the traveler free to follow almost any course that promised to bring him most easily to his journey's end. Here we find wheel tracks in almost any direction without system, and without regard to section lines or property rights. When, in a community so situated, the time arrives for the fencing of fields and the establishing of permanent roads and rights of way, the strict application of this rule would, in many cases, produce fantastic results quite inconsistent with justice. In this case we feel that its applicability is doubtful. Here we have a grant of a right of way for ingress and egress to this land from the east line of the section along the south side of the canal. The evidence shows that at the time the deed was made the wheel tracks along the south side of the canal extended the whole length of the canal through the property of the plaintiff, with a turn-off at the point where the defendants now contend it should still remain. There is no reason suggested in the evidence why a turn-off at this point is more advantageous to defendants' land than at the southeast corner of the defendants' land. In construing any grant of right of way the use, in character and extent, is limited to such as is reasonably necessary and convenient to the dominant estate and as little burdensome to the servient estate as possible for the use contemplated. In the case before us the terms of the grant cannot be said to be wholly general. The way is to be along the south side of the canal,

and is to extend from the east line of the section, and is for the purpose of ingress and egress. , In the absence of proof of disadvantage to the dominant estate occasioned by turning the road across the canal at the southeast corner of the land, the right of the servient estate to have the easement as little burdensome as possible consistent with the use contemplated should be recognized.

Under all the circumstances in this case, we are satisfied that the rule that, where the grant of a right of way is general, the fact that there is such a right of way visible and in use upon the land makes the grant certain, is not applicable.

For the reasons given, the decree of the district court is affirmed, with costs.

STRAUP, C. J., and FRICK, J., concur.