Schettler et al. v. Lynch et al.

*Baskin,* and *Bartch, JJ.,* concur.

---

23   305
27   259

# B. H. SCHETTLER et al., Respondents, v. E. P. LYNCH and P. H. RILEY, Appellants.

DEDICATION—OF PUBLIC HIGHWAY—EXPRESS OR IMPLIED—QUESTION OF INTENT—IMPLIED DEDICATION—FOUNDED ON EQUITABLE ESTOPPEL— IMPLIED DEDICATION NOT WITHIN STATUTE OF FRAUDS—DEDICATION AND ACCEPTANCE OF HIGHWAY—RIGHTS OF PUBLIC—DO NOT DEPEND ON TWENTY YEARS' USER—ACCEPTANCE OF HIGHWAY—BY PUBLIC— WHEN INFERRED—DEDICATION AND ACCEPTANCE—OF HIGHWAY— BINDS SUBSEQUENT ABUTTING OWNERS—FINDINGS—OF LOWER COURT WHEN NOT DISTURBED ON APPEAL—ADMISSIBILITY OF EVIDENCE— WHEN NOT INQUIRED INTO ON APPEAL.

Vol. 23 u—20

Schettler et al. v. Lynch et al.

1. DEDICATION: OF PUBLIC HIGHWAY: EXPRESS OR IMPLIED: QUESTION OF INTENT. A dedication of land for a public highway may be either, express, as where the owner manifests his purpose by a grant evidenced by writing, or implied, when the acts and conduct of the owner clearly manifest the intention on his part to devote the land to the public use; but in either case it is always a question of intention and no particular formality or form of words is necessary.

2. IMPLIED DEDICATION: FOUNDED ON EQUITABLE ESTOPPEL. An implied dedication is founded on the doctrine of equitable estoppel, and when land has been thus set apart as a highway for the use, convenience and accommodation of the public, and enjoyed as such, the law considers it in the nature of an estoppel *in pais*, which precludes the original owner from revoking such dedication.

3. IMPLIED DEDICATION NOT WITHIN STATUTE OF FRAUDS. An implied dedication of land as a highway is not within the statute of frauds, and may be established by parol or in any conceivable way by which the intent of the owner can be made apparent.

4. DEDICATION AND ACCEPTANCE OF HIGHWAY: RIGHTS OF PUBLIC: DO NOT DEPEND ON TWENTY YEARS USER. Where land has been set apart by the owner for public use as a highway and accepted by the public, the right of the public does not depend upon a ten or twenty years' user or possession; the dedication may be inferred from long continued use by the public with the knowledge of the owner and without objection by him.

5. EVIDENCE: OF INTENT TO DEDICATE: LAW IMPLIES DEDICATION. Where the evidence shows such a course of conduct and such acts, respecting the land in controversy, as clearly manifest an intention, on the part of the owner, to appropriate it to the public use as a highway, and such as were calculated to induce people to believe that the land was devoted to such purposes and lull them into security, as to any rights they might acquire with reference thereto, the law will imply a dedication.

6. ACCEPTANCE OF HIGHWAY: BY PUBLIC: WHEN INFERRED. It appearing from the evidence that without the land in controversy the street would be but one and one-half rods in width and not of sufficient width to permit some teams to turn around and that since it has formed part of the street it has been used more or less by the public, an acceptance of the dedication on the part of the public, may be inferred.

7. DEDICATION AND ACCEPTANCE: OF HIGHWAY: BINDS SUBSEQUENT ABUTTING OWNERS. Land having been once dedicated by the owner of

the soil as a highway and having been accepted by the public, all subsequent grantees of abutting lands are bound by such dedication and have no right to obstruct any portion of the street.

8. FINDINGS: OF LOWER COURT: WHEN NOT DISTURBED ON APPEAL. Findings of the lower court, having some evidence to support them, will not be disturbed on appeal unless so manifestly erroneous as to demonstrate some oversight or mistake.[1]

9. ADMISSIBILITY OF EVIDENCE: WHEN NOT INQUIRED INTO ON APPEAL. When a cause is tried in the lower court without a jury, and there is ample evidence, clearly competent, to sustain the decree and judgment, the question of the admissibility of certain other evidence will not be inquired into or determined on appeal.[2]

Decided March 25, 1901.

Appeal from the Third District Court, Salt Lake County.—
*Hon. Ogden Hiles,* Judge.

Action to enjoin defendants from erecting a fence or other obstruction on a certain street in Salt Lake City. From a judgment for plaintiffs' defendants appealed.

AFFIRMED.

*Messrs. Bennett, Howat, Sutherland & Van Cott* for appellants.

It was not competent to prove any alleged statements of Nicholas Groesbeck when he was dead, and the witnesses were interested. The statute is absolutely clear on this question.

In the Revised Statutes of Utah, 1898, sec. 3413, it is provided:

"The following persons can not be witnesses:

"1.   Those who are of unsound mind.   *   *   *

"2.   Children under ten years of age.   *   *   *   *

---

[1] Whitesides v. Green, 13 Utah, 341.
[2] Schroeder v. Pratt, 21 Utah, 176; 60 Pac. Rep. 512.

"3.  A party to any civil action.  *  *  *  *  *  *
and any person directly interested in the event thereof, and
any person from, through, or under whom such party or inter-
ested person derives his interest or title or any part thereof,
when the adverse party in such action  *  *    *  defends
*  *  *  *  as  *  *  *  *  *  grantee, directly or re-
motely  *  *  *  *  *  as to any statement by, or trans-
action with, such deceased  *  *  *  *  person, or matter
or fact whatever, which must have been equally within the
knowledge of both the witness and such  *  *  *  *  de-
ceased person."  Ewing v. White, 8 Utah 250; Wood v. Fox,
8 Utah 380; Whitney v. Fox, 166 U. S. 637.

The rule is that when a constitutional statute is unam-
biguous, it is not open to construction or interpretation, but
must be enforced; the court only resorts to construction and
interpretation when a statute is ambiguous; when it is unam-
biguous and its constitutionality is once established, then the
court has no duty to perform except to enforce the statute ac-
cording to its terms.  Springville v. Johnson, 10 Utah 356.

The law on the subject of dedication.  9 Ency. Law (2
Ed.), page 2133; Pierpont v. Harrisville, 9 W. Va. 220;
Spurrier v. Bland, 49 S. W. 467; City, etc., v. Grote, 52 Pac.
128.

See, in addition to the above cases, that there must be an
acceptance in order to make a dedication complete:  Wash-
burn, Easements and Servitudes (4 Ed.), 246-7, top paging;
Elliott, Roads and Streets, p. 113, et seq.; Tupper v. Huson,
46 Wis. 646; Trerice v. Barteau, 54 Wis. 99; Shellhouse v.
State, 11 N. E. 484.

As there is no evidence in the record showing that the gen-
eral public in any way accepted the same, it is conclusive that
there was no acceptance.  If the general public accepted the
alleged dedication, then the public would be liable for any in-

juries that might occur.   Elliott on Roads and Streets, p. 113; 9 Ency. Law (2 Ed.), page 24; Gowen v. Philadelphia, etc., 40 A. D. 489; Pierpont v. Harrisville, 9 W. Va. 215; Tupper v. Huson, 46 Wis. 646; Trerice v. Barteau, 54 Wis. 99.

If it is contended that a right of way is shown by prescription, then it is well settled in this State that such right of way must be used uninterruptedly for twenty years.   See Harkness v. Woodmansee, 7 Utah 227; Shellhouse v. State, 11 N. E. 485.

The respondents have no right of way over the twelve feet in question by prescription.   Harkness v. Woodmansee, 7 Utah 232.

*Messrs. Zane & Rogers* and *W. D. Riter, Esq.,* for respondents.

The phrase "dedicated to the use of the public," is defined in the following section of the statute in force when the twelve feet of ground in front of defendants lots was dedicated, as we insist, to the public to be used as a street:

"All roads, streets, alleys and bridges laid out or erected by others than the public, and dedicated or abandoned to the use of the public, are highways.   A highway shall be deemed and taken as dedicated and abandoned to the use of the public when it has been continuously and uninterruptedly used as a public thoroughfare for a period of ten years."   1 Compiled Laws of Utah, 1888, sec. 2066.

The following section of the Revised Statutes of 1898 also define the phrase "dedicated and abandoned to the use of the public."   Rev. Stat. of Utah, 1898, sec. 1114; Rev. Stat. of Utah, 1898, sec. 1115.

The portions of a street or highway not used so much as

other portions, are nevertheless a part thereof. Burrows v. Guest, 5 Utah, 91.

A man may dedicate his land to the public to be used as a street with or without writing, by fencing it out to be used as such, or by acquiescence in such use, or his intention to dedicate may be inferred from his acquiescence in its continued use as a road, or street, or an alley. Wilson v. Hull, 7 Utah 90; 9 Am. and Eng. Ency. of Law (2 Ed.), p. 34; Morgan v. Railroad Co., 96 U. S. 716-723; City of Cincinnati v. White's Lessee, 6 Peters 440; 2 Greenleaf on Evidence, sec. 662; Roads and Streets (Elliott), pp. 91, 92, 98 and 99; Jones on Easements, sec. 424.

The plaintiffs also insist that the twelve feet was accepted as a part of Church street. The city authorities have never objected to the dedication, and the street has been open to the public as a public street for more than twenty years, and the proof is that the one rod and a half is too narrow for wagons to turn in; therefore, the use of the twelve feet is beneficial to the public. It would be impossible to assume that the public authorities would accept the twenty-four feet and nine inches, and reject the twelve additional feet necessary to make the street wide enough for convenient use. The use of the twelve feet is beneficial to the public, hence, its acceptance will be implied. Elliott on Roads and Streets, pp. 115 and 116; Wilson v. Hull, 7 Utah 93-94.

"Acceptance may be implied from user by the public for the purposes for which dedicated." 9 Am. and Eng. Ency. of Law (2 Ed.), p. 43.

In Clawson v. Wallace, 16 Utah 300, notwithstanding the error of the court below in admitting certain testimony, the court held the findings and decree were sustained by a preponderance of the testimony, and affirmed the judgment. This has been the uniform holding of this court. Whittaker

v. Ferguson, 16 Utah 240; Mining Co. v. Jennings, 14 Utah 221; North Point Irr. Co. v. Canal Cos., 16 Utah 246; Mining Co. v. Haws, 7 Utah 515; Salt Lake Foundry and Machine Co. v. Mamoth Min. Co., 6 Utah 351, 151 U. S. 447.

### STATEMENT OF FACTS.

This action was brought to enjoin the defendants from erecting any fence or obstruction on a certain street in Salt Lake City, called Church street, or any part thereof, or maintaining a fence or obstruction thereon.

From a map or plat admitted in evidence, it appears that the street in question is thirty-six and three-fourths feet wide and extends three hundred and thirty feet south from Fourth South street, and that one and a half rods of its width is on the west side of a line extending north and south through the center of block 39, plat "A," Salt Lake City survey. The remaining twelve feet of its width, as shown by the plat, is on the east side of that line. It further appears from the evidence that formerly Nicholas Groesbeck owned lot 6, block 39, and Joseph O. Young owned the land south of lot 6, embraced in the twelve foot strip, and that adjoining on the east. Through mesne conveyances defendant Riley is now the owner of the west end of that lot and claims the disputed twelve feet along his land, and likewise defendant Lynch, who now owns the parcel of land lying immediately south of defendant Riley's lot, claims so much of the twelve-foot strip in dispute as lies along his land. About eighteen years ago, Groesbeck, then owning the land now owned by the defendants, including the twelve-foot strip in controversy, built a board fence leaving that strip in the street, and Young at the same time constructed a fence on the same line along his land, also leaving a strip of the same width in the street. It appears Groesbeck's fence stood there for a number of years, and some of the posts are

still standing on defendants' land.   Young's fence is likewise
still standing.   Some of the witnesses testified, in substance,
that the street had been used by the public for traffic and for
teams from eighteen to twenty or more years, but the twelve
feet in dispute were not used as much as the other portion of
the street, owing to an irrigating ditch constructed on the cen-
ter line of the block which was the west line of the twelve-
foot strip, and owing to the obstruction placed on the strip by
the defendants.   It is also shown in evidence that about eigh-
teen years ago, which was about two years before Groesbeck's
death, a sign, with the name "Church Street" on it, was put
upon the fence and afterwards upon an old house, which stood
on Groesbeck's land and extended about a foot and a half over
the east line of the disputed strip of land.   The sign remained
there, as appears, for eight or ten years.   About twenty houses,
with people living in them are fronting the street.   There
is also evidence showing that the twelve-foot strip is necessary
for the convenience and accommodation of the public, and then
there is some evidence tending to show that it was used very
little by the public except for tying teams and turning them
around.   It appears that the irrigation ditch interfered with
the travel thereon, and that in consequence the beaten track
is on the western side of the street and not on the twelve-foot
strip.   The deeds of the defendants show clear titles to their
premises, including the land in question.   Prior to the com-
mencement of this suit defendant Lynch inclosed the twelve
feet with a fence so far as his land extended.

At the trial the court entered a decree in favor of the
plaintiffs and the defendants appealed.

The case having been stated as above, BARTCH, J., deliv-
ered the opinion of the court.

The appellants insist that the court erred in finding that

the evidence established a dedication, by the owner, and an acceptance, by the public, of the land in controversy, for the purposes of a highway.

To determine the question here presented it is, in the first instance, important to refer to the principles of law involved, and then ascertain whether, in the light of those principles, the evidence established a valid dedication. A dedication may be either express or implied. It is express when there is an express manifestation, on the part of the owner, of his purpose to devote the land to the particular public use, as in the case of a grant evidenced by writing. It is implied when the acts and conduct of the owner clearly manifest an intention on his part to devote the land to the public use. Whether the dedication be express or implied, an intention of the owner to appropriate the land to the public use must appear. It is always a question of intention. In neither case is any particular formality or form of words necessary. If the intention to dedicate is manifest it is sufficient. An implied dedication is founded on the doctrine of equitable estoppel, and when land has been thus set apart as a highway for the use of the public, for their convenience and accommodation, and enjoyed as such, and private and individual rights acquired in relation to it, "The law," as said by the Supreme Court of the United States, "considers it in the nature of an estoppel *in pais,* which precludes the original owner from revoking such dedication." City of Cincinnati v. White, 6 Pet. 431. And such an appropriation of land is not within the statute of frauds, and may be established by parol evidence showing the acts and conduct of the owner of the land. In fact an implied dedication of land, for public use as a highway, may be established in any conceivable way by which the intent of the owner can be made apparent.

"The intent which the law means is not a secret one, but

is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate and they are so received and acted upon by the public, the owner can not, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent." Elliott on Roads and Streets, pp. 92, 93.

Nor, where land has been so set apart by the owner for public use as a highway and accepted by the public, does thereafter the right of the public depend upon a ten or twenty years' user or possession.

"The right of the public does not rest upon a grant by deed, nor under a twenty years' possession; but upon the use of the land with the assent of the owner, for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." Greenleaf on Ev., sec. 662; Elliott on Roads and Streets, pp. 98, 99.

And the dedication may be inferred from long continued use by the public with the knowledge of the owner and without objection by him.

In Wilson v. Hull, 7 Utah 90, it was said:

"The intention of the owner of the land to dedicate may

be inferred from his acquiescence in its continual use as a road by the public. In order to constitute acquiescence in a legal sense, the owner must know that the public is using his land as a road. There must be an act of the mind, a knowledge that the public is using the land as a highway, and a purpose on the part of the owner not to object. A knowledge of the use for such a purpose, without objection by word or act, may authorize the inference that the owner consents to the appropriation."

In his Treatise on the Law of Highways, Mr. Angell, in section 142, speaking on the subject of dedication of land to public use as a highway, says:

"No particular formality is required; it is not affected by the statute of frauds; it may be made either with or without writing, by an act of the owner, such as throwing open his land to the public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate; or an acquiescence in the use of his land for a highway, or his declared assent to such use, will be sufficient; the dedication being proved in most, if not in all, cases, by matter *in pais,* and not by deed. The vital principle of dedication is the intention to dedicate—the *animus dedicandi;* and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. Time, therefore, though often a very material ingredient in the evidence, is not an indispensable ingredient in the act of dedication." 9 Am. and Eng. Ency. of Law, 34, 38-41; Jones on Easements, sec. 424; Burrows v. Guest, 5 Utah 91; Whitesides v. Green, 13 Utah 341; Harding v. Jasper, 14 Cal. 643; Rowan's Ex'rs v. Town of Portland, 8 B. Mon. 232; Morgan v. Railroad Co., 96 U. S. 716; City of Cincinnati v. White, 6 Pet. 431.

Applying these principles to the present case, the question

is, does the evidence establish a dedication, by Groesbeck, of the land in dispute, to the public to be used for the purposes of a street? This, we think, must be answered in the affirmative. The testimony shows such a course of conduct and such acts, respecting the land in controversy, as clearly manifest an intention, on the part of the owner, to appropriate it to such use. He built a fence to inclose his land, leaving the twelve-foot strip as a part of the street, and that fence remained there during the remainder of his life and for some years afterwards. In fact, some of the posts are still standing. After the fence was built a sign was placed on the owner's house, on which the street was designated "Church Street." One witness says Groesbeck himself put the sign up, but whether he or some one else placed it on the house is not material since he as owner permitted it to remain there as an index to a public street and acquiesced in the use of the land by the public as a street. As he lived in the vicinity, he must be presumed to have known that the people were acquiring rights, with reference to the street, of which the land in dispute formed a part, by erecting buildings thereon, and otherwise, and that they were using the land as a highway, yet there is nothing to show that he ever objected to such use, but it does appear that he permitted the land to be used in common with the other portions of the street for traffic and teams without interference, so far as shown by the record. Thus his conduct and acts were calculated to induce the people to believe that the land was devoted to the purpose of a street, and to lull them into security, as to any rights they might acquire with reference thereto. As a result of all this about twenty houses, with people living in them, are now fronting the street. Under such circumstances the law will imply a dedication, the intention of the owner being unequivocally manifested by his conduct and acts.

Schettler et al. v. Lynch et al.

Since, then, the dedication was complete, was there an acceptance by the public? On this point it is shown in evidence that the strip of land, in dispute, is necessary for the convenience and accommodation of the public, and that without it the street would be but one and a half rods wide, and would not be of sufficient width to permit some teams to turn around. It also appears from the proof that the land, after the fence was built which left it in the street, was continued to be used, more or less, by the public, until the obstruction, which gave rise to this controversy, was placed thereon. From these circumstances an acceptance, on the part of the public, may be inferred. The owner of the soil having thus dedicated it for the purposes of a highway, and the same having been accepted for such purpose by the public and the people having never relinquished their rights so acquired, all subsequent grantees of the abutting lands are bound by the dedication and have no right to obstruct any portion of the street. Elliott on Roads and Streets, pp. 115, 116.

It is true there is some conflict in the evidence relating to the dedication by the owner of the land, and the acceptance by the public, and the findings of fact, hereinbefore referred to, are thus based upon conflicting evidence, but there appears to be a decided preponderance of proof in support of them, and, therefore, this court will not disturb them. Likewise as to the other findings, and the conclusions of law of which the appellants complain. In such a case the findings of the trial court will not be disturbed unless they are so manifestly erroneous as to demonstrate some oversight or mistake. Whitesides v. Green, 13 Utah 341.

The appellants also insist that the court erred in admitting in evidence, against their objections, certain statements and declarations, relating to the appropriation of the land in controversy for street purposes, made by the owner of the land

about the time of the dedication. The objection to the admission of such statements and declarations is based upon the ground that the person, who made them, is dead and the witnesses, who testified to them, are parties to the suit and interested in the result thereof. It is, therefore, urged that such testimony was inadmissible under section 3413 Revised Statutes. Since, however, this case was tried by the court and not before a jury, and since, as we have concluded, there is ample evidence in the record, clearly competent, to sustain the decree and judgment, and as the same result would be inevitable, if this evidence had been excluded, we do not deem it necessary or important to determine whether or not the statute invoked applies in a case like the one at bar, and therefore refrain from passing upon the question here presented. Schroeder v. Pratt, 60 Pac. Rep. 512.

We find no reversible error in the record. The judgment is affirmed with costs. *Baskin, J.,* and *Hart, D. J.,* concur.