Railroad Co. v. Utilities Commission.

No. 20,722.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee,* V. THE
PUBLIC UTILITIES COMMISSION OF THE STATE OF KANSAS,
*Appellant.*

### SYLLABUS BY THE COURT.

RAILROADS — *Private Farm Crossings* — *Public Utilities Commission
Without Jurisdiction* — *Statute.* Chapter 244 of the Laws of 1911,
which gives the owner of a farm divided by a railroad a right to a
crossing over the railroad right of way and which gives him a right
of action to compel its construction by the railroad company, and the
right to construct it himself if the railroad company refuses to con-
struct it, confers absolute rights upon the owner of such farm which he
may vindicate in court, and his rights conferred by this statute are not
dependent upon the sanction of the public utilities commission, nor
does this act nor the regulatory railroad acts of this state confer
jurisdiction concerning private farm crossings on the public utilities
commission.

Appeal from Shawnee district court, division No. 2; GEORGE
H. WHITCOMB, judge. Opinion filed July 8, 1916. Affirmed.

*F. S. Jackson,* of Topeka, and *H. O. Caster,* of Oberlin, for
the appellant.

*R. W. Blair, C. A. Magaw,* and *T. M. Lillard,* all of Topeka,
for the appellee.

The opinion of the court was delivered by

DAWSON, J.: In 1879 a railway was constructed through a
tract of land of 1600 acres in Pottawatomie county. This land
for some years past has been the farm or ranch of T. J. Eddy.
In 1911 the legislature enacted:

"SECTION 1. Whenever any railroad, either steam or electric, shall
run through any farm so as to divide it, such railroad at the request of
the owner of such farm, shall construct, keep and maintain, a crossing
either on, over or under such railroad track, at some convenient place,
which crossing shall be so constructed as to permit ready and free cross-
ing thereon, by animals, farm implements and vehicles.

"SEC. 2. That through the fences on either side of the right of way
of such railroad, at such crossing, such railroad shall construct, keep
and maintain gates so as to permit the passage of animals, farm imple-
ments and vehicles.

"Sec. 3. If upon such request being made, such railroad shall fail, neglect or refuse to construct such crossing and gates, or to keep the same in repair, then the owner of such farm may, by appropriate action, compel such railroad to so construct, keep and maintain such crossing and gates, or such owner may construct or repair such crossing and gates, and then collect from said railroad the cost thereof." (Laws 1911, ch. 244.)

On the assumption that the railroad and utilities acts vest in the public utilities commission the power to hear and determine controversies of this character, Eddy filed a complaint before the commission, showing his need of a crossing over the right of way of the railroad company to give him convenient access between the two parts of his farm. Upon a hearing, the commission issued an order:

"It is now therefore ordered, that the respondent, The Union Pacific Railroad Company, do, without cost to complainant, construct, keep and maintain a farm crossing, either over or under the tracks of said railroad company at the point designated in the complaint and as shown on the blue print filed herein and marked exhibit No. 1, being at a point 1380 feet west of the respondent's mile post No. 79 on its Leavenworth Western Branch, and that respondent comply with this order within thirty days from this date."

Promptly thereafter the railroad company brought suit to vacate the order, alleging that it was unlawful, unreasonable and void, that the act of 1911 (ch. 244) was unconstitutional, that the order and the act deprived the company of its property without due process of law and without compensation, and that it denied the company the equal protection of the law, contrary to the fourteenth amendment, etc., and that the commission had no jurisdiction to make the order. The district court vacated the order, holding that it was unreasonable and unlawful, and in an opinion delivered therewith held that while the act was valid, the property of the railroad company should not be taken without compensation nor should the company be required to pay the cost and maintenance of the crossing.

The public utilities commission appeals, but before considering its contentions, it may shorten the discussion to quote the view of the railroad company:

"Chapter 244 can be upheld as a valid act provided it is so construed as to require the person applying for a crossing and gates to pay for them. The court will, of course, when two constructions are possible, use the one

that will make the statute valid. We therefore urge that the decision of the court below, as far as the construction of the statute is concerned, is correct and that its judgment should be affirmed."

The commission contends: (1) The public utilities commission had authority to make the order. (2) The statute is constitutional and does not deprive the railroad company of its property without just compensation or due process of law. (3) Chapter 244 of the Laws of 1911 is a proper exercise of the police power and applies to railroads constructed before its enactment as well as those constructed after its enactment.

It will be observed that the act of 1911 does not confer jurisdiction on the public utilities commission for its enforcement. It merely says that the owner of a farm whose request for a crossing is denied by the railroad company may maintain an appropriate action to compel the railroad to construct the crossing or he may construct the crossing himself and collect the cost from the railroad company.

The public utilities commission claims jurisdiction under sections 7186, 7188 and 7196 of the General Statutes of 1909, and sections 1 and 2 of chapter 238 of the Laws of 1911. Other provisions of law are to the same effect. A quære as to the power of the public utilities commission on a somewhat analogous case was suggested in *The State, ex rel., v. Railway Co.*, 95 Kan. 22, 30, 147 Pac. 801.

Section 7179 of the General Statutes of 1909, which is part of the principal railroad regulatory legislation of this state, prior to the enactment of the public utilities act, and which is neither superseded nor repealed by the latter, provides:

"The provisions of this act shall be construed to apply to and affect *only* the transportation of passengers, freight, express matter and cars between points within this state, by railroad and express companies and all other common carriers, not including street-railway companies."

The act of 1911 (Laws 1911, ch. 244, § 3) gives the owner of the farm, whose request for a crossing is refused, a right to bring "an appropriate action" to compel the railroad company to construct such crossing, or to construct it himself, and collect the costs.

A proceeding before the public utilities commission is not an action in the ordinary sense of the term. The commission can not compel action by the railroad. In any matter within

its statutory jurisdiction it may order what ought to be done, but the compulsion must be procured through a judicial tribunal (*The State v. Johnson*, 61 Kan. 803, 60 Pac. 1068) ; and the collection of a claim like the cost of a farm crossing, if governmental aid is required thereto, is purely the exercise of a judicial function.

Moreover the statute of 1911 gives the owner the absolute right to a farm crossing, and that right is not dependent upon the discretion of the public utilities commission. Surely under the plain terms of this statute the farm owner could not be denied a crossing because the commission did not think it necessary or expedient that he should have one, nor could the plain terms of the statute authorizing him to maintain an action to compel the railroad to construct the crossing or authorizing him to construct a crossing himself be emasculated by making these rights dependent on the considerate sanction of the commission.

And yet we see many expedient reasons why the public utilities commission should have primary control of matters of this sort. If no central state control is exercised over the construction of private farm crossings (and there must be hundreds of them in this state), there may be a want of uniformity in farm crossings; there may be defective construction of crossings; there may be so many of them that the safe and expeditious transportation of passengers and property will be seriously impeded and human life imperiled. These considerations would almost tempt a court to read this power into the statutes conferring authority upon the commission to regulate and supervise the affairs of the railroads. We must not do so, however, for we know very well that such is the business of the legislature and not of the judiciary.

The right of a farmer to a private crossing over a railroad and to recover the cost of it from the railroad company is of no more public concern than the right of a farmer to have the railroad build a fence along its right of way to protect his stock from damage by the railroad (Gen. Stat. 1909, §§ 7075-7077), and yet it would hardly be contended that the enforcement of his rights under that act was dependent upon the discretion or sanction of the public utilities commission. The duties of the public utilities commission relating to the enforce-

Stevenson v. Shawnee County.

ment of the railroad laws of the state have to do with those matters which affect the general public, and except where the statutory language is clear that the legislature intended to extend the commission's power to the exercise of jurisdiction on matters of mere private rights, it has no jurisdiction. It had no jurisdiction in the case at bar, and the result is that the district court did not err in vacating the order of the commission requiring the appellee to construct this farm crossing at its own expense. (*Saylor v. Crooker*, 97 Kan. 624, syl. ¶ 4, 156 Pac. 737.)

The other interesting questions need not be considered.

The judgment is affirmed.