Certiorari.   Commission's Order annulled.

BAMBERGER ELECTRIC R. CO. et al. v. PUBLIC .
UTILITIES COMMISSION OF UTAH.

No. 3738.   Decided January 17, 1922.   (204 Pac. 314.)

1. RAILROADS—STATUTE REGULATING GRADE CROSSINGS APPLIES
ONLY TO PUBLIC CROSSINGS. The provisions of Comp. Laws
1917, § 4811, giving the Public Utilities Commission the right
to refuse or permit railroad crossings, and to prescribe the
conditions under which such crossings can be installed, mani-
festly relate entirely to public crossings.

2. PUBLIC SERVICE COMMISSIONS—FINDING ON UNDISPUTED EVIDENCE
ADMITTING BUT ONE INFERENCE IS CONCLUSION OF LAW. Though
the court is ordinarily bound by the findings of the Public
Utilities Commission when the evidence is conflicting or ad-
mits of more than one inference, the findings by the Commis-
sion on undisputed evidence which admits of but one inference
is a mere conclusion of law, not binding on the court.

3. RAILROADS—EVIDENCE HELD TO SHOW CROSSING WAS PRIVATE AND
NOT PUBLIC. Evidence at a hearing before the Public Utilities
Commission, showing that an existing highway had been va-
cated by the county and a new one laid out which crossed an
electric railroad track on a bridge, and that the land in the
old highway had been conveyed to the adjoining landowners
or other railroad company; but that the railroad company had
maintained a crossing on the old highway line under an agree-
ment with two landowners adjoining the tracks at that point,
held to show conclusively that the crossing maintained was
a private crossing and not a public one.

4. RAILROADS—TEST OF PUBLIC AND PRIVATE CROSSING STATED. A
road or crossing may be public, though it can be used by few
persons only, the test being whether any one who has occasion
to use the crossing could object to its obstruction by the rail-
road, in which event the crossing is public, or whether such
objection could be made only by certain persons, in which
case the crossing is private.[1]

5. RAILROADS—COMMISSION'S AUTHORITY TO INVESTIGATE CROSSING
ACCIDENTS AND TO MAKE ORDERS DOES NOT AUTHORIZE CLOSING
CROSSING. The authority given the Public Utilities Commis-
sion by Comp. Laws 1917, § 4812, to investigate railroad cross-
ing accidents and to make such orders with respect thereto as

[1] *Wilson v. Hull*, 7 Utah, 90, 24 Pac. 799; *Schettler* v. *Lynch*, 23
Utah, 305, 64 Pac. 955.

seem just and reasonable does not authorize the Commission to make an order after such investigation closing a crossing, since the authority to close crossings is specifically covered by section 4811.

6. EMINENT DOMAIN—OWNER OF PRIVATE RIGHTS, INJURED BY CHANGE OR DISCONTINUANCE OF HIGHWAY, IS ENTITLED TO DAMAGES. Though the state may change, discontinue, or alter public highways or crossings without the consent of those affected, if such change results in damage to private interests, compensation must be made to the parties damaged.[2]

7. RAILROADS—PERMISSIVE USE DOES NOT MAKE PRIVATE CROSSING A PUBLIC ONE. The fact that a private crossing over a railroad track was used by those having occasion to do business with owners thereof does not make the crossing a public one, since such use was permissive only.

8. RAILROADS—COMMISSION'S POWER OVER PRIVATE CROSSINGS NOT DETERMINABLE ON REVIEW OF ORDER CLOSING HIGHWAY CROSSING. On review of an order of the Public Service Commission closing a highway crossing over an electric railway track, which was based on an erroneous findings that the crossing was a public one, the court need not determine the rights of the Commission with respect to the private crossing, since it is not to be assumed the Commission would have made the same order if it had found that the crossing in question was private.

Application by the Bamberger Electric Railroad Company and others for a writ of review against the Public Utilities Commission of Utah.

WRIT ISSUED, and order of the Commission ANNULLED.

*De Vine, Howell, Stine & Gwilliam* and *A. W. Agee,* all of Ogden, for plaintiff Railroad Company.

*David J. Wilson,* Co. Atty., of Ogden, for other plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal Farr,* Asst. Atty. Gen., for Public Utilities Commission.

FRICK, J.

The plaintiffs filed an application in this court, praying for a writ of review against the Public Utilities Commission of Utah, hereinafter called Commission. In the application various grounds are alleged why the Commission acted with-

[2] *Tuttle* v. *Sowadzki,* 41 Utah, 501, 126 Pac. 959.

Certiorari.    Commission's Order annulled

out or in excess of its authority or jurisdiction in making a certain order in which the Commission ordered a certain railroad crossing vacated and discontinued, to which crossing more particular reference will hereinafter be made. A writ as prayed for was duly issued, and the Commission has duly certified the proceedings to this court.

The questions arising upon the application have been duly argued and submitted on behalf of the plaintiffs by their respective counsel and on behalf of the Commission by the Attorney General of this state.

The circumstances upon which the proceedings of the Commission are based, briefly stated, are as follows:

On July 28, 1921, the Commission, upon its own motion or initiative, issued the following order:

"It appearing that on July 5, 1921, an accident occurred at a grade crossing over the tracks of the Bamberger Electric Railroad Company about three miles south of Ogden, Utah, commonly known as Jacobs crossing; and it further appearing that said grade crossing is claimed to be dangerous to traffic: Now therefore, upon motion of the Commission, it is ordered that the Commission institute an investigation with a view of eliminating the danger of said crossing."

The Commission further ordered where the hearing would be had, and that notice be duly served and published as required by statute. The order and the proceedings based thereon were conducted pursuant to Comp. Laws Utah, 1917, § 4812, which reads as follows:

"The Commission shall investigate the cause of all accidents within this state upon the property of any public utility, or directly or indirectly arising from or connected with its maintenance or operation, resulting in loss of life or injury to persons or property, and requiring, in the judgment of the Commission, investigation by it, and shall have the power to make such order or recommendation with respect thereto as, in its judgment, may seem just and reasonable; provided, that neither the order or recommendation of the Commission nor any accident report filed with the Commission shall be admitted as evidence in any action for damages based on or arising out of the loss of life or injury to persons or property in this section referred to. Every public utility is hereby required to file with the Commission, under such rules and regulations as the Commission may prescribe, a report of each accident so occurring of such kinds or classes as the Commission may from time to time desigate."

Notice of the order was duly served and published as provided in the order, and the parties, without filing pleadings of any kind, appeared before the Commission, and a somewhat protracted hearing was had, at which much evidence was produced to which reference will hereinafter be made, and which, it seems to us, went far beyond anything contemplated by the Commission in its order.

After the evidence was completed, two of the Commissioners, constituting a majority, made findings and entered an order, which, so far as material here, is as follows:

"The Commission, being advised, finds:

"That the crossing in question, known as Jacobs Crossing, is a crossing of a public highway by a double track, interurban electric railroad, as illustrated by Exhibit 3, attached hereto and made a part hereof;

"That on this crossing, on July 5, 1921, a north-bound electric car ran over and killed four adults, who were attempting to cross in a Ford automobile; and that about 2 years prior thereto, two persons, riding in a Ford automobile, were killed by a south-bound Bamberger Electric car, at this crossing.

"The Commission further finds that said crossing is dangerous to traffic and should be abolished; and that in lieu thereof as a roadway, the present arm of the road going to the Brockbank house should be continued south, parallel to the railroad tracks, approximately 1,200 feet, to a junction with the State Highway west of the viaduct; the roadway to be graded at present 16 feet wide; right of way to be furnished free by the Bamberger Electric Railroad Company, of such width as to permit of a graded highway 20 feet wide. The construction of said continuation shall be undertaken by the Bamberger Electric Railroad Company, and the cost of said construction shall be divided, two-thirds to the Bamberger Electric Railroad Company and one-third to Weber county."

One of the Commissioners dissented from the findings and from the order upon the ground that the evidence does not warrant the findings that the crossing is a public crossing, and, further, that the Commission is without jurisdiction.

The plaintiffs, in due time, and in accordance with the statute, made application for a rehearing, which was denied, and hence this application for a writ of review.

The plaintiffs assail the jurisdiction of the Commission upon various grounds. The principal and most important ground, however, is that the evidence is conclusive that the

crossing in question is a private crossing, and is maintained for the convenience and benefit of plaintiffs Brockbank and Jacobs.

The crossing was originally put in by the railroad company for the convenience of Brockbank and one Jarrell, who was the predecessor in interest of the plaintiff Jacobs. We shall hereinafter only refer to Jacobs, since he has succeeded to all the rights of Mr. Jarrell, and hence the latter requires no further consideration in this opinion.

We remark that although the proceeding was instituted by the Commission upon its own motion pursuant to the provisions of section 4812, which we have herein set forth in full, nevertheless the Commission's jurisdiction is now sought to be sustained by the Attorney General under the provisions of section 4811, which we here insert in full:

"No track or any railroad shall be constructed across a public road, highway, or street at grade, nor shall the track of any railroad corporation be constructed across the track of any other railroad or street railroad corporation at grade, nor shall the track of a street railroad corporation be constructed across the track of a railroad corporation at grade, without having first secured the permission of the Commission; provided, that this subsection shall not apply to the replacement of lawfully existing tracks. The Commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.

"The Commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing and the terms of installation, operation, maintenance, use, and protection of each crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad, and of each crossing of a public road or highway by a railroad or street railroad, and of a street by a railroad or vice versa, and to alter or abolish any such crossing, and to require, where in its judgment it would be practicable, a separation of grades at any such crossing heretofore or hereafter established, and to prescribe the terms upon which such separation shall be made and the proportions in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected, or between such corporations and the state, county, municipality, or other public authority in interest.

"Whenever the Commission shall find that public convenience and necessity demands the establishment, creation, or construc-

tion of a crossing of a street or highway over, under, or upon the tracks or lines of any public utility, the Commission may by order, decision, rule, or decree require the establishment, construction, or creation of such crossing, and said crossing shall thereupon become a public highway and crossing."

Quite apart from the fact that the section was not applicable to "existing tracks" at the time of the passage of the act, March, 1917, a mere cursory reading of section 4811 will, we think, convince any one that its provisions relate entirely to public crossings. Such was the construction given it by the Commission itself, and hence it made a finding that the crossing in question is a public crossing.

The plaintiffs, however, contend that the crossing in question is a mere private crossing, and that for that reason the Commission had not the power to direct that it be discontinued, and hence the order made by it is in excess of its jurisdiction. To that effect is the holding of the Supreme Court of Kansas under a statute similar to ours. *Union Pac. R. R. Co.* v. *Utilities Com.*, 98 Kan. 667, 158 Pac. 863. For the reasons hereinafter stated, however, it is not now necessary to decide, and we do not decide, what jurisdiction or power the Commission has over private crossings in so far as it may affect only the public utility.

In this connection the Attorney General, however, contends that in view that the Commission has found that the crossing in question is a public crossing if that finding is supported by any substantial evidence the finding is binding upon us. While it is true that where there is a conflict in the evidence relative to any material fact, or where conflicting inferences may be drawn from the evidence with respect to such fact, we, ordinarily, are bound by the findings of the Commission, yet where, as here, the evidence is without dispute respecting the character and use of the crossing in question; then the question of whether such crossing is a public or private crossing is a legal one, and must be determined from the undisputed evidence. The finding of the Commission in this case is therefore a mere conclusion of law deduced from the undisputed facts.

In view of what has just been said it becomes necessary for us to review the evidence, and from it determine whether

in law the crossing in question is a public or private crossing. It is necessary to do this in order to determine whether the Commission had jurisdiction to make the order in question.

In order to help the reader to a better understanding of the real situation and to make clearer the character and purpose of the crossing in question we here insert a sketch of the crossing and the immediate surroundings.

The broken parallel lines marked "AH" on the sketch indicate the original highway as it was located and used before and at the time the electric railway marked "ERR" was constructed, which highway was vacated and abandoned by the county commissioners of Weber county. The parallel lines, including the dotted lines, marked "PH," indicate the highway as it was located after the original highway marked "AH" was vacated and abandoned. The point marked "V" indicates the overhead crossing over the railroad tracks which is 21 feet above the top of the rails. The original highway was abandoned and the present one established in order to avoid the original grade crossing at the point marked "PC." The point marked "PC" is the crossing in question, which was constructed and is maintained by the railroad company for the use and benefit of the plaintiffs Brockbank and Jacobs. The small black square marked "B" indicates the home of the plaintiff Brockbank, while the other small black square marked "J" indicates the home of plaintiff Jacobs. The

lines from the crossing "PC" to "B" and "J" merely show the roads leading from the crossing to the houses of Brockbank and Jacobs. The other lines on the sketch have no material bearing upon the question involved here, and need no special mention.

The evidence is undisputed that at large expense to the railroad company it acquired sufficient land by purchase to locate the present highway marked "PH"; that upon acquiring the land and after constructing the overhead crossing and placing the new highway in a condition for public travel the county commissioners of Weber county passed a resolution vacating and abandoning the old highway, including the point where the railroad crosses at "PC," and at the same time the commissioners accepted and established the new highway marked "PH" as a public highway. The evidence also shows, as indicated by the overhead crossing, that the railroad tracks are laid in a somewhat deep cut at the point of the overhead crossing, which cut extends northerly towards the crossing marked "PC." However, at the place where the crossing is located there is a fill and the tracks were elevated considerably above the natural surface of the ground. The plaintiffs Brockbank and Jacobs, however, demanded a passable crossing at that point so that they would have convenient ingress and egress to and from the public highway as located after the original was vacated and abandoned. To accomplish that purpose the railroad company filled in dirt west of the crossing and also east of the tracks so as to make the crossing passable for Brockbank and Jacobs. The crossing as constructed, that is, the railroad tracks, are, however, still higher than the roadway on both sides of the tracks, so that in going over the crossing from either side it is necessary to ascend to pass over the tracks.

After the original highway was vacated and abandoned the commissioners of Weber county conveyed by quitclaim deed the strip of ground occupied by the old highway to the respective owners of the adjacent lands, and in the same manner conveyed the strip inside of the railroad right of way, including that part where the crossing marked "PC" is located, to the railroad company and the title to that strip is

now vested in the railroad company and in the respective parties aforesaid. Weber county disclaims all right or interest in or to any part of the abandoned highway, including that part which constitutes the crossing, and has done so during all of the time since the old highway was abandoned and the new one established, which was more than 10 years preceding the hearing.

It was also made to appear that plaintiffs Brockbank and Jacobs have somewhat extensive orchards on their farms, from which they produce considerable fruit for market, and that during every season those who may desire to purchase fruit from them use the crossing in question to pass to and from their farms, and that the crossing can be and is used at any time by anyone who may desire to call at their homes and transact any business with them; that it is not and cannot be used for any other purpose, since there is no outlet therefrom; that they themselves use it constantly as a matter of convenience to pass to and from their homes to the public highway; that their children pass over the crossing in question in going to and in returning from the public school, which is located near the public highway some distance northerly from the crossing in question; that Jacobs owns an orchard lying east of the railroad track at the point marked "X" on the sketch, which is reached by him by passing over the crossing in question.

It was also shown that within the last two years two accidents had occurred at the crossing in question by collisions between trains on the electric railroad and automobiles in attempting to cross the railroad track at the crossing marked "PC." In the first accident two persons were killed in attempting to cross the tracks with an automobile, one of whom was Mr. Brockbank, the husband of Mrs. Brockbank, who now owns and occupies the farm, and at the second accident four persons were killed while attempting to cross the railroad tracks in an automobile. The first collision occurred between the automobile and a trolley car passing southerly while the latter collision occurred between the automobile and a trolley car passing northerly. In the latter accident the persons who were killed were leaving the farms of plaintiffs

Brockbank and Jacobs, where they had called on business.

It was also shown that for the convenience of Brockbank and Jacobs and the railroad company cattle guards were placed on both sides of the crossing to keep cattle from straying onto the railroad right of way and tracks. There is no evidence, however, respecting the number of cattle that pass from time to time over the crossing. The evidence is clear, however, that the general public has not used the crossing, and that it was not intended as a crossing for general use, although it can be used by any one who desires to transact business with Brockbank and Jacobs.

The evidence is also to the effect that while the crossing is dangerous it is no more so than many of the other private crossings, more than 50 in number, between Salt Lake City and Ogden.

Both Mrs. Brockbank and Mr. Jacobs vigorously object to the abandoning or changing of the crossing in question. Both contend that it would seriously inconvenience them and would greatly decrease the value of their farms. In fact Jacobs testified that it would depreciate the value of his farm to the extent of $10,000.

The evidence is also to the effect that, if the crossing were discontinued as ordered by the Commission, and plaintiffs Brockbank and Jacobs were compelled to pass southerly along the railroad right of way to the overhead crossing, while they would escape the danger incident to the present crossing, nevertheless their children, in passing to and from school, would encounter great danger from the numerous automobiles which constantly pass to and fro over the present highway, and that it would increase the distance to school practically one-half mile, and would in many other respects greatly inconvenience them, and would affect the value of their fruit farms.

We have been thus specific respecting the evidence for two reasons: (1) To show the character and use of the crossing, and (2) that if the crossing be held a public crossing, as the Commission found, plaintiffs Brockbank and Jacobs have such an interest in its maintenance as may entitle them

to compensation under our Constitution in case they would suffer substantial damages by reason of having the crossing discontinued without their consent.

The question therefore is, Is the crossing a public or a private crossing? If it is possible to make evident the real intention of the parties to a transaction by their acts and conduct, it seems to us that there is no room for any doubt that in this case all the parties concerned, including Weber county, manifestly intended to vacate and abandon the old highway as it then existed and in its place to locate and establish a new one. This intention was manifested in many ways. The old highway was formally vacated, which was followed by conveying the strip of ground over which it passed and by a complete abandonment of its use. Moreover, a new highway was located, constructed, and thereafter used instead of the old one. Again, that portion which is now occupied by the crossing in question was included in the order of vacation, and the ground was conveyed to the railroad company, which now has title thereto subject to the rights of those using the crossing. The crossing was thereafter constructed by virtue of an agreement between Brockbank and Jacobs, and for their convenience and benefit, and for the convenience and benefit of any one else who might use it as hereinbefore stated. Can any one doubt that if Brockbank and Jacobs should desire to fence along the margin of their lands, and thus shut off ingress and egress to and from their farms, that the public or any one else could legally complain? Again, if by agreement between Brockbank and Jacobs on the one hand and the railroad company upon the other the railroad company would fence along the easterly margin of its right of way and place a gate there with a lock to which only Brockbank and Jacobs had keys, so that they alone could pass over the crossing, could any one of the general public complain? The real test of whether a roadway or crossing is private or public consists in that any one of the public having the right of passage may compel its remaining open and unobstructed.

It is quite true, as suggested by the Attorney General, that

a road or crossing may be public, although it is and can be
used by a few persons only.  It is, however, also true that
under such circumstances any one who has occasion to use
the crossing can successfully complain of its obstruction, and
can require it to be kept open for passage.  Where the cross-
ing is private, however, as in the case at bar, the public
have no right to complain if it is fenced in and locked        4
gates are constructed so as to exclude every one except
the persons for whose benefit it was created and is main-
tained.  That is precisely what, under the undisputed evi-
dence, may be done with the crossing in question, and the
public would have no legal cause for complaint.

The Attorney General, however, cites and relies upon the
following, among other cases, which he insists sustain his con-
tention that the crossing in question is a public crossing and
not a private one:  *St. P., M. & M. Ry. Co.* v. *City of Minne-
apolis,* 44 Minn. 149, 46 N. W. 324; *Galveston, etc., Ry. Co.*
v. *Baudat,* 21 Tex. Civ. App. 236, 51 S. W. 541; *Missouri Pac.
Ry. Co.* v. *Lee,* 70 Tex. 496, 7 S. W. 857; *Ill. Cent. R. R. Co.*
v. *People,* 49 Ill. App. 538; *Morgan* v. *Railroad Co.,* 96 U. S.
716, 24 L. Ed. 743; *Wilson.* v. *Hull,* 7 Utah, 90, 24 Pac. 799;
*Schettler* v. *Lynch,* 23 Utah, 305, 64 Pac. 955; *Johnson* v.
*Supvrs. of Clayton Co.,* 61 Iowa, 89, 15 N. W. 856; *Masters*
v. *McHolland,* 12 Kan. 23; *Nichols* v. *State,* 89 Ind. 299;
*Los Angeles Co.* v. *Reyes,* 3 Cal. Unrep. 775, 32 Pac. 233.
There are a number of other cases cited, but in view that
they merely reiterate the doctrine stated in the foregoing
cases it is not necessary to cite them here.

In *St. P., M. & M. Ry. Co.* v. *City of Minneapolis,* supra,
the gist of the decision is stated in the headnote in the fol-
lowing words:

"Where a railway company laid its track over a traveled street
or road used by the public as a highway, which had not thereto-
fore been legally laid out as such, and the public thereafter con-
tinued to use the crossing as a highway for many years, without
interference by the railway company, which, on the contrary,
kept the same in proper repair for public use, and planked the
same, and built cattle guards on each side thereof, *held* sufficient
evidence of a dedication thereof for public use as a highway."

In *Galveston, etc., Ry. Co.* v. *Baudat,* supra, it is held that where a road is continuously used by the public for a long period of time, in that case 50 years, a dedication for public use and an acceptance by the public may be implied.  There can be no such implication in the case at bar without doing violence to the manifest intention of the parties as that intention is reflected from their acts and conduct hereinbefore set forth.

In *Missouri Pac. Ry. Co.* v. *Lee,* supra, it is held:

"Where the owner of land allowed a road thereon to be used by his customers going to and from his mill, and by the general public in passing from certain villages, and when such owner required a railway company to make a crossing on such road, which was subsequently used, to the knowledge of the railway company, for a considerable time by the general public, such acts are evidence of a dedication of the road to the public."

In *Ill. Cent. R. R. Co.* v. *People,* supra, it is said:

"Proof of parol dedication must clearly show an intention on the part of the landowner to dedicate, but the proof may consist of acts of the owner, mutually indicative of such intention, or his acquiescence in the use of the land in question, and under circumstances which would reasonably forbid such acquiescence if there was no such intention."

In *Morgan* v. *Railroad Co.,* supra, the following language quoted from the case of the *City of Columbus* v. *Dahn,* 36 Ind. 330, is adopted and approved:

"The question whether a person intends to make a dedication of ground to the public for a street or other purpose must be determined from his acts, and statements explanatory thereof, in connection with all the circumstances which surround and throw light upon the subject, and not from what he may subsequently testify to his real intent in relation to the matter."

In *Wilson* v. *Hull,* supra, the decision is clearly reflected in the second headnote, which reads as follows:

"Where there was evidence that in 1869 the road in dispute was laid out by the territorial surveyor four rods in width upon the line between two sections, and that from time to time fences were erected along it a great portion of its length, that the public traveled a portion of the road all the time and the other portion a part of the time, and some of the residents upon or near it, with the expressed consent of the road supervisor, paid their

road taxes in making improvements; *held* that a finding that the road was a highway would not be disturbed."

In *Schettler* v. *Lynch,* supra, this court, in the course of the opinion, states the law thus:

"A dedication may be either express or implied. It is express when there is an express manifestation, on the part of the owner, of his purpose to devote the land to the particular public use, as in the case of a grant evidenced by writing. It is implied when the acts and conduct of the owner clearly manifest an intention on his part to devote the land to the public use. Whether the dedication be express or implied, an intention of the owner to appropriate the land to the public use must appear. It is always a question of intention. In neither case is any particular formality or form of words necessary. If the intention to dedicate is manifest it is sufficient."

The decisions quoted from clearly illustrate that the undisputed facts takes the case at bar far outside of the principles announced in those cases. It is not necessary to quote further from the decisions.

Nor is it necessary to discuss at length the contention of the Attorney General that, in view that the Commission is given full power to investigate accidents as provided in section 4812, supra, and "to make such order or recommendation with respect thereto as in its judgment may seem just and reasonable," it had the power to make the order in question here. The Attorney-General has manifestly overlooked the fact that it is section 4811 which makes specific provision respecting the power and authority of the Commission over crossings. It needs no citation of authorities that where a specific power is conferred by statute upon a tribunal, board, or commission with limited powers, the powers are limited to such as are specifically mentioned. Any other rule would make an autocrat of a utilities commission, and every utility, as well as every private owner, would be subject to any order the Commission might make, simply because some accident had occurred. Such is not the purpose of the statute, and if it were it could not be upheld wherever the orders of the Commission would affect private interests, as in the case at bar, and where damages would result to such private interests by reason of the orders of the Commission.

That such is the law is clearly held in the cases cited by the Attorney General from Connecticut and New Hampshire, to wit, *Appeal of New York, etc., Ry. Co.*, 58 Conn. 532, 20 Atl. 670; *New York, etc., Ry. Co.* v. *Railroad Commrs.*, 62 Conn. 527, 26 Atl. 122, and in *Leighton* v. *Railroad*, 72 N. H. 224, 55 Atl. 938.

In the case last cited it is clearly pointed out that, although the state, under the police power, may change, discontinue, or alter public highways and crossings without the consent of those who may be affected by such change, yet where private interests are affected and damages result to such interests from such change, discontinuance, or alteration compensation must be made to the parties damaged. This court is committed to that doctrine. See *Tuttle* v. *Sowadzki*, 41 Utah, 501, 126 Pac. 959. See, also, 1 Elliott, Roads and Streets (3d Ed.) § 461.

Under the undisputed facts of this case we are forced to the conclusion that the crossing in question was manifestly intended as a private crossing for the convenience and benefit of the plaintiffs Brockbank and Jacobs, and not for the convenience and benefit of the public generally, and therefore comes within the category of private crossings. So far as the crossing was used by those who had occasion to use it in their intercourse with Brockbank and Jacobs, the use was permissible merely. The rule in that regard is well stated by the Supreme Court of Michigan in the case of *Stickley* v. *Township of Sodus*, 131 Mich. 510, 91 N. W. 745, 59 L. R. A. 287, where it is said:

"A mere permissive use of a private road by the general public, however long continued, will not make it a public highway."

While it may be that an individual, under certain circumstances, by long and continued use, may acquire some rights to use the private roads, that, however, would not make the road a public road or highway. We are therefore not now concerned with, nor do we pass upon, the question as to what the powers of the Commission may be over public utilities in case of accidents under section 4812, when no private interests are affected.

Nor do we pass upon the question of whether the Commission has power or jurisdiction to regulate private crossings in so far as the rights of the public utility are concerned. Indeed, even if we had the power in this proceeding to do that, which for obvious reasons, we do not have, it would be unfair and unjust to both the Commission and the parties to this proceeding should we attempt it. As we have seen, this proceeding is not based upon any complaint by any one, and the Commission acted solely upon its own initiative and upon the sole thought that the crossing in question is a public crossing. What order, therefore, the Commission would have made if it had found the crossing to be a private crossing (as it manifestly is), if it would have made any order, and to what extent the interested parties might have acquiesced in such an order, are matters of mere conjecture, if indeed one may venture to conjecture upon matters so uncertain and speculative.

This proceeding was instituted and conducted by the Commission upon the theory that the crossing is a public crossing, and it has not considered its powers nor its duties with regard to private crossings. The Commission should therefore be given a free hand to determine for itself whether it has any power or jurisdiction in proceedings of this kind over private crossings, and, if so, what those powers are, and, in connection with that, to determine for itself what order it should make as to a private crossing if it decides to make any. This court may only review the Commission's powers after it has acted, and may not anticipate its actions.

In view of what has been said it becomes our duty, as provided in Comp. Laws Utah 1917, § 4834, to set aside and annul the order of the Commission hereinbefore set forth. It is therefore ordered that the order aforesaid be, and the same is hereby, set aside and annulled. Plaintiffs to recover their costs of this proceeding.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.